HENRY E. HAMILTON *et al.*

*v.*

THE CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY *et al.*

*Filed at Springfield March 28, 1888.*

1. DEDICATION—*by plat for streets—acceptance in order to pass the fee—conveyance of lots before acceptance—where the fee resides.* In order to make a complete dedication of streets and alleys by the making, acknowledgment and recording of a town plat, the acceptance of the municipal corporation is necessary. Until acceptance, the fee does not vest in the corporation, but remains in the original proprietor.

2. A conveyance of lots upon a street by the original proprietor, where there has been no acceptance by the corporate authorities of the streets marked upon the recorded plat, will carry title to the center of the street. The fee in the street, not absolutely, but as burdened by the offer of dedication, will pass to the grantee.

3. Where no acceptance was ever made of streets and alleys attempted to be dedicated by a plat of a town properly executed and recorded, and before vacation of the plat and streets, the proprietor of the town conveyed to purchasers all the lots and blocks indicated on the plat, it was *held*, that the title to the streets, although never having vested in the corporate authorities, did not revert to the original proprietor, but passed to those parties succeeding to the title to the lots.

124 235
31a 286
124 235
136 145
136 285
36a 612
124 235
161 214
124 235
163 367
124 235
173 637
124 235
174 171
124 235
175 352
124 235
179 418
124 235
184 213
184 215
184 216
124 235
187 ¹518
124 235
190 ¹447
124 235
199 283
199 ²283
199 ²313
124 235
205 ¹166
124 235
208 ¹ 41

4. SAME—*former decisions.* The statements made in *Canal Trustees v. Havens,* 11 Ill. 556, *Hunter v. Middleton,* 13 id. 54, and *Gebhardt v. Reeves,* 75 id. 301, to the effect that the making and recording of a town plat, showing streets thereon, passed the title to the streets to the municipal corporation, are to be regarded as stating the effect of a statutory dedication, without deciding what will constitute such a dedication. There must be some act showing an acceptance, before the fee in the streets will pass.

5. PARTIES—*in ejectment—new party defendant—when proper.* A person who has made a conveyance of land with a warranty of title, is properly admitted as a co-defendant in an action of ejectment against his grantee, with the party holding under him.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

This was an action of ejectment. The premises sought to be recovered are described in the declaration, as follows: "All those parts and portions of May street, Canal street, Hamilton street and Owen street, as laid out upon a plat of Canalport, which plat was recorded in the recorder's office of Cook county, December 4, 1835, in book 'H,' at page 163, and which said parts and portions of said streets are now embraced within lots 22, 23, 24, 25, 26 and 27, in block 11, as laid down upon the plat of S. J. Walker's dock addition to Chicago, as recorded in the recorder's office of said Cook county."

The plat of Canalport referred to was made by Richard J. Hamilton and Hiram Pearsons, in 1835. It covered and subdivided into lots and blocks about three hundred acres in section 30, township 39, on both sides of the west branch of the south branch of the Chicago river. The land subdivided was low prairie land, intersected with sloughs of wet ground, and two miles from the inhabited part of Chicago. The plat showed one hundred and nineteen blocks, a large number of which were subdivided into lots, and numerous streets, having a length in all of about ten miles. In the same, or the year following, Hamilton and Pearsons made a second map, which covered the same ground and also extended over about one hundred

acres adjoining.   The second plat, as to the property covered
by the first plat, was, in its general outline of lots and blocks,
the same as the first.   It differed, however, in certain material
particulars.   This second map was never acknowledged, but
was lithographed and extensively circulated.   Hamilton and
Pearsons sold lots and blocks from time to time with reference
to both of these plats.   None of the various streets were at
any time opened or improved, or otherwise used by the public,
but the land continued to be for many years an open and un-
occupied prairie.

In 1848 a toll-road was opened and planked from Chicago
to Blue Island.   This road was called the Blue Island Plank
Road.   It crossed the land shown on the plat of Canalport, in
a south-westerly direction, crossing the various platted streets
diagonally, until near the river, where it followed for a short
distance, westerly, one of the platted streets, known as Canal
street, thence across the river, by a bridge constructed by the
plank road company, to the section line, and on the section
line to Blue Island.   The road was built by a private corpo-
ration, and was used as a toll-road.

In 1842 Hiram Pearsons was adjudged bankrupt, and such
remaining interests as he had in Canalport vested in his as-
signee, and these were subsequently sold and conveyed by the
assignee to various parties.   In 1853, Samuel J. Walker, by
contract and deed, acquired from Richard J. Hamilton such
remaining interest as he claimed to have in the various lots
and blocks in Canalport, and became, through other convey-
ances, the principal, and, ultimately, the sole owner of the
property.   At the time Walker acquired this title (1853) the
land was still vacant prairie, except a few pieces of ground
occupied by squatters.   There were no evidences of any street
or public road on the entire tract, except the Blue Island Plank
Road.   In 1856, and subsequently, a portion of the land was
occupied by tenants of Walker for the purpose of making brick.
In 1862 he leased the entire tract to one Henry T. Jones, who

took actual possession of the particular land in controversy, and other land, for the purposes of a brick-yard.

Hamilton and Pearsons had sold lots and undivided interests in many lots to different persons, and the original plan of improvement contemplated by the plat never having been carried out, the legislature, in 1865, passed an act entitled "An act to authorize the vacation, re-subdivision and partition of Canalport, in Cook county." This act provided, that on petition of the owners of a majority in number of the lots in the subdivision, the circuit court might appoint three commissioners to vacate the plat, and re-plat and subdivide the town, and make partition among the owners. In 1869 this act was amended, by conferring like powers on the Superior Court of Chicago. No action seems to have been taken under these laws.

In May, 1871, an ordinance was passed by the common council of Chicago, vacating that portion of the plat of Canalport north of the west branch of the south branch of the Chicago river, which embraces the lots and streets in question. By its terms, the ordinance was not to take effect until the premises were re-platted in accordance with a plat annexed to the ordinance, and a plat "showing the same should be placed upon record, dedicating to the public use the streets, alleys, and portions of the same, as shown on said annexed plat." Subsequently, in the years 1871 and 1873, Walker made new subdivisions of the property, known as "S. J. Walker's dock addition to Chicago," "S. J. Walker's second dock addition," and "Reaper's addition to Chicago." Plats of these subdivisions were duly acknowledged and recorded. They showed as dedicated to the public use the various streets required to be dedicated by the vacating ordinance. A comparison of the original plat of Canalport with the present subdivisions shows that these strips, called streets, in controversy, run diagonally to the street and lot lines in the new subdivisions. The various streets shown on such subdivisions have been opened and improved by the city.

The lots of which the particular property in controversy are a part, viz., lots 22 to 27, in block 11, S. J. Walker's dock addition to Chicago, were occupied as a brick-yard by Henry T. Jones, as tenant under Walker, from 1862 to 1881, when the property was sold to the defendant, the Chicago, Burlington and Quincy Railroad Company. In the same year the company leased the same to the defendants, James B. and Charles S. Thompson, and Stephen C. Hall, who took possession of it under the lease, and were occupying it as a lumber yard when this suit was brought, December 10, 1882. The plaintiffs are the heirs of Richard J. Hamilton and Hiram Pearsons, who made the original plat of Canalport. Hamilton died in 1860, and Pearsons in 1868.

The claim on which the suit is based, is, that the plat of Canalport was a statutory plat; that the fee of the platted streets vested in the city, in trust for the public, and that when the ordinance purporting to vacate the plat was adopted, the fee to the streets shown on it reverted to the plaintiffs, as the heirs-at-law of Hamilton and Pearsons. In the court below the case was submitted to the court for trial, without a jury. The court found for the defendants, and rendered judgment accordingly, from which the plaintiffs have appealed to this court.

Messrs. EDSALL & EDSALL, Mr. JOHN B. HAWLEY, and Mr. TELFORD BURNHAM, for the appellants:

The plat of Canalport was a statutory plat, and the fee of the streets therein was vested in the city of Chicago, in trust, for the use of the public. Rev. Laws of 1833, p. 599; *Lee* v. *Town of Mound Station,* 118 Ill. 304; *Gebhardt* v. *Reeves,* 75 id. 301.

No form of certificate of acknowledgment was prescribed by the statute, and a substantial conformity to its provisions is sufficient. *Lavalle* v. *Strobel,* 89 Ill. 371; *Dock Co.* v. *Russell,* 68 id. 426; *Gebhardt* v. *Reeves,* 75 id. 301; *Town of Lake View* v. *Le Bahn,* 120 id. 92.

By the acknowledgment and recording of the plat, under the statute, the fee of the streets vested in the city of Chicago, in trust, for the use of the public. Rev. Laws of 1833, p. 599, sec. 4; *Village of Brooklyn* v. *Smith*, 104 Ill. 429; *Gebhardt* v. *Reeves*, 75 id. 301; *Canal Trustees* v. *Havens*, 11 id. 554; *Lee* v. *Town of Mound Station*, 118 id. 304; *Hunter* v. *Middleton*, 13 id. 54; *Waugh* v. *Leech*, 28 id. 488; *Morgan* v. *Railroad Co.* 96 U. S. 716; *Town of Lake View* v. *Le Bahn*, 120 Ill. 92.

There was no title to the streets in the proprietors of Canalport, during the period intervening between the acknowledgment and recording of the plat and its vacation by the city, which could be conveyed by them, or which would pass to their assignees in bankruptcy. *Gebhardt* v. *Reeves*, 75 Ill. 301; *Kuch* v. *Rock Island*, 97 U. S. 993; 3 Washburn on Real Prop. (4th ed.) 94, 348.

When the city vacated and abandoned these streets, the fee thereto reverted to the plaintiffs in error, as the heirs-at-law of the original proprietors. *Gebhardt* v. *Reeves*, 75 Ill. 301; *Canal Trustees* v. *Havens*, 11 id. 556; *Hunter* v. *Middleton*, 12 id. 54; *St. John* v. *Quitzow*, 72 id. 336; *Town of Lake View* v. *Le Bahn*, 120 id. 92; *Kuch* v. *Rock Island*, 97 U. S. 693; *Morgan* v. *Railroad Co.* 96 id. 716.

No formal acceptance of the dedications contained in a statutory plat of this character is necessary on the part of the municipal authorities. *Town of Lake View* v. *Le Bahn*, 120 Ill. 92; *Waugh* v. *Leech*, 28 id. 488; *Lee* v. *Town of Mound Station*, 118 id. 304.

Messrs. DEXTER, HERRICK & ALLEN, for the appellees:

To entitle plaintiffs to recover, they must show a legal, as distinguished from an equitable, title. *Kirkland* v. *Cox*, 94 Ill. 400; *Roundtree* v. *Little*, 54 id. 323; *Wales* v. *Bogue*, 31 id. 464; *Chiniquy* v. *Catholic Bishop*, 41 id. 148.

The plat did not show the width of the streets, and was in other respects uncertain, and did not therefore take effect as

a statutory plat. *Village of Winnetka* v. *Prouty,* 107 Ill. 218; *Town of Lake View* v. *LeBahn,* 120 id. 100; *Maywood Co.* v. *Village of Maywood,* 118 id. 63.

As to the acknowledgment of the plat, see *Tully* v. *Davis,* 30 Ill. 103, and *Gardner* v. *Tisdale,* 2 Wis. 153.

To constitute a valid dedication, there must be both the intention to dedicate on the part of the donor, and the acceptance of the dedication by the public authorities. *Insurance Co.* v. *Littlefield,* 67 Ill. 373; *Grube* v. *Nichols,* 36 id. 96; *Fisk* v. *Town of Havana,* 88 id. 209; *Littler* v. *City of Lincoln,* 106 id. 353; *Village of Winnetka* v. *Prouty,* 107 id. 218.

That this well settled rule applies to statutory as well as common law dedications, has been expressly held by this court. *Littler* v. *City of Lincoln,* 106 Ill. 353; *Village of Winnetka* v. *Prouty,* 107 id. 218; *Lee* v. *Town of Mound Station,* 118 id. 163.

There is no doubt that this plat, notwithstanding the failure of the municipality to accept it, had an existence as a plat, and as conveyances were made under it, rights were required with reference to it. A common law plat gives certain rights to grantees in conveyances made under it, notwithstanding there may be no complete dedication of the streets to the public, and notwithstanding even a refusal by the public to accept the attempted dedication. *Baker* v. *Johnson,* 21 Mich. 319; *Detroit* v. *Railroad Co.* 23 id. 173; *Parsons* v. *Trustees,* 44 Ga. 529; *Village of Winnetka* v. *Prouty,* 107 Ill. 225.

Mr. CHIEF JUSTICE SHELDON delivered the opinion of the Court:

Questions are made whether the proof shows the legal title to the premises to have been in Hamilton and Pearsons, the ancestors of the plaintiffs, at the time they made the plat of Canalport, and whether the plat was made out and acknowledged in conformity with the statute, so as to take effect as a

16—124 ILL.

statutory plat. We do not find it necessary to consider these questions, for the reason, that assuming their affirmative, that the proof does show the legal title to have been in Hamilton and Pearsons at the time they laid out Canalport, and that the plat was in all respects in conformity with the statute, so as to make the same a good statutory plat, still we are of opinion this action must fail.

The position of the plaintiffs is, that no acceptance by the city of Chicago, of the dedication of the streets, was necessary to vest it with the fee simple title to the streets in Canalport,— that the statute itself vested the title in the municipality immediately when the plat or map was "made out and certified, acknowledged and recorded," as required by the act; and reliance is placed upon the literal reading of the statute, that such plat "shall be deemed, in law and equity, a sufficient conveyance to vest the fee simple  *  *  *  in trust, to and for the uses and purposes set forth and expressed," and upon expressions which are found in certain of the earlier opinions of this court, as in *Canal Trustees* v. *Havens*, 11 Ill. 556, that "on the recording of the plat, the fee in the streets, *eo instanti*, passes to the corporation," and in *Hunter* v. *Middleton*, 13 Ill. 54, that "the acknowledgment and recording of a town plat vests the legal title to the ground embraced by the streets and alleys, in the corporation of the town," and, to like effect, in *Gebhardt* v. *Reeves*, 75 Ill. 301. But in these cases there was no question raised or considered as to acceptance of the dedication by the municipality, and what was said is to be regarded as observation upon the effect of a statutory dedication, without deciding upon what would constitute a complete statutory dedication. It is well settled, that at common law, to make a complete dedication there must be acceptance,—not any formal act of acceptance, but that there must be user, or some other act indicating acceptance by the public authorities, in order to complete the dedication. *Gentleman* v. *Soule*, 32 Ill. 271; *Grube* v. *Nichols*, 36 id. 96; *Illinois Ins. Co.* v. *Littlefield*,

67 id. 368; *Town of Princeton* v. *Templeton*, 71 id. 68; *Fisk* v. *Town of Havana*, 88 id. 208. And this principle applies to statutory dedications by the making, acknowledging and recording of a town plat, as well as to common law dedications, as has been expressly decided by this court. (*Littler* v. *City of Lincoln*, 106 Ill. 353.) In that case the question was presented, and underwent full consideration, when it is that the fee contemplated by the statute relating to town plats actually vests in the municipality,—whether immediately upon the making, acknowledging and recording of the plat, or not until acceptance of the dedication by the municipality,—and it was held that the fee did not vest until such acceptance. The law imposes upon cities and villages the obligation of improving and keeping in repair their streets, and the idea was rejected that individual owners of land, by the making of town plats, could create in municipalities the ownership of streets, and thereby impose upon them the burden and responsibility of improving and keeping in repair streets. It was held that this could not be done without the assent of the municipality, and its acceptance of the dedication. It was there said: "And so, until acceptance by the municipality, although the owner is estopped to deny the dedication whenever private rights intervene, the act of the owner, in platting, etc., is in the nature of a mere offer to the municipality. Until the municipality accepts, it can not be bound, by *mandamus* or otherwise, to open or improve the streets; and until then, it necessarily can have no rights in the streets, as trustee or otherwise." The analogy of a conveyance by deed was adverted to, where acceptance of the deed is necessary to effectuate the conveyance; and that, although acceptance of a grant may be presumed where it is beneficial, yet if a burden is imposed by the grant, an acceptance is not to be presumed from the mere fact that the deed is executed.

In *County of Wayne* v. *Miller*, 31 Mich. 447, there was a like decision under a similar statute. In that case a statute

of Michigan provided that a plat executed in accordance with its provisions should "vest the *fee* of such parcels of land as are therein expressed, named or intended for public uses, in the county." In remarking as to the effect of a plat made under the statute, the court there say: "If the plat is only an offer to dedicate, the offer must be accepted, or it may be withdrawn. * * * But if the plat is regarded as a grant, it is equally necessary that there should be acceptance. No one can thrust a grant upon another without his assent." See *Field* v. *Manchester*, 32 Mich. 279.

There is not to be the implication that the offer of dedication made by a town plat may, at any time before acceptance, be withdrawn, at the will of the offerer. There is a distinction here in respect of the public, and individuals having private rights. It was recognized, in *Littler* v. *City of Lincoln*, that the owner might be estopped to deny the dedication whenever private rights intervene. And in *Waugh* v. *Leech*, 28 Ill. 492, speaking of streets not used by the public, it was said: "If they (the streets) are not reclaimed by the original proprietor in some mode authorized by law, they remain public, open to the use of the public, whenever they may choose to appropriate them." And see *Town of Lake View* v. *LeBahn*, 120 Ill. 101; 2 Dillon on Mun. Corp. sec. 642. We have statutes which provide for the vacation of town plats in whole or in part.

The acts relied on as showing an acceptance here, are, first, the proceedings of the common council of Chicago in 1854, adopting an ordinance "for planking Blue Island avenue," and the assessment to pay for this improvement; second, the fact that from 1851 the property was assessed for taxation under the description of lots and blocks; third, an act of the legislature, in 1865, entitled "An act to authorize the dedication, re-subdivision and partition of Canalport, in Cook county," and an amendatory act in 1869, conferring like powers on the Superior Court of Chicago.

As to the proceedings for the improvement of Blue Island avenue, it appears that these proceedings originated in the petition of Henry Walker and others, presented to the common council February 6, 1854, for "planking Blue Island avenue from Harrison street to the bridge of the Blue Island Plank Road Company, across the west branch stream." On March 6, the committee on streets and alleys, to whom was referred the petition, reported in favor of the same. The further proceedings consisted of an order for the improvement, and an assessment to pay for it, and a return of the assessment warrant. In all of these proceedings the improvement is described as "the planking of Blue Island avenue," but in some of them Canal street is mentioned, in describing the course of the improvement, as being along that street about a quarter of a mile. After making the original plat of Canalport, Hamilton and Pearsons made a new plat, called the lithograph map, which covered the same and a large amount of other adjoining property. There is no pretense that this map was ever acknowledged, or that it was a statutory plat. It showed Canal street, the same as the original plat. It is plausibly urged that the references in these proceedings were to this lithographed plat, from the fact that in the assessment warrant and order of sale, the blocks not shown in the original plat of Canalport appear by the numbers and descriptions given on the lithograph map. It is not claimed that these proceedings had any reference to the particular streets sought to be recovered in this action. The only appearance of any street over the entire territory covered by the plat of Canalport was the Blue Island plank road, a toll road laid out by a private company in 1848, which road was afterwards called Blue Island avenue. There was no Blue Island road, or Blue Island avenue, or any street corresponding to it, on the plat of Canalport. Blue Island avenue ran south-westerly through Canalport, crossing its platted streets diagonally. Thus crossing the platted streets, the recognition and use of Blue Island avenue was inconsistent

with the plat of Canalport, and proceedings for the improvement of that avenue would not seem to be in harmony with and in acceptance of the dedication by the plat, but the reverse.

Because of the reference to Canal street,—one of the streets shown on the plat,—in describing the course of Blue Island avenue, as being for a short distance along a part of that street, we do not think that therefrom there should be attributed to the common council an intention to accept the entire plat of Canalport, with its twenty-six streets, having a total length of about ten miles. The condition, afterwards as well as before, evinces that there never was any such intention. Canalport was but a projected town. A plat of it was made and recorded, but the town was never built. The site remained vacant prairie, except as it was occupied and used for a brickyard. There was no public to have use for the streets, and it appears that from the date of the making of the plat, (1835,) until the vacation of the plat in 1871, not one of all these streets, in any part, was opened or improved, or in any way used by the public, except as Blue Island avenue followed along a part of Canal street for a short distance, as above stated.

We can not think that there should be given to this proceeding for the planking of Blue Island avenue, the effect of an acceptance of the dedication of the streets of Canalport. The fact that the lots in the subdivision were assessed as such, does not show an acceptance. (*Kennedy* v. *Mayor of Cumberland,* 65 Md. 514; *Baker* v. *Johnson,* 21 Mich. 319.) In the former case, it was a question whether the dedication of Lee street, shown on a plat called "Shriver's addition," had been accepted. The court say: "The fact that lots were assessed in the assessment books of the city, as lots in 'Shriver's addition,' is, in our opinion, entitled to no weight whatever in determining this question of acceptance. This was simply the recording the description of the lots for the purpose of taxation, as the owners themselves had chosen to describe them in their deeds, and in order to distinguish and identify the property

assessed and taxed." In the latter case, a plat had been made showing upon it a public square. In remarking upon acts evidencing acceptance on the part of the public, the court say, page 350 : "The assessment or non-assessment of the premises we do not regard as material, as the assessing officers do not represent the public for the acceptance of dedications." In *Lee* v. *Town of Mound Station*, 118 Ill. 314, where evidence had been admitted that the square in question, which, it was claimed, was dedicated, was not assessed for taxation, this court, referring to this evidence, say : "We think the evidence was admissible, as tending, though it may be slightly, to show a public acceptance." Clearly, the assessment in the present case is of little weight against the strong evidence that there was no acceptance.

The act of the legislature of 1865, which is referred to as an acceptance of the dedication, provides that the proprietors of a majority in numbers of the lots in Canalport may file a petition in the circuit court, in chancery, making the other proprietors parties, and authorizes the court, on such petition and notice to the other proprietors, to appoint commissioners, etc., and enter a decree vacating the subdivision and re-platting and partitioning the property among the several proprietors. This act recognizes the existence of the plat of the subdivision, that there were private rights in respect thereto, and provides for a partition among the lot owners. But we are unable to perceive that in this there was any recognition that there had been an acceptance, by the public, of the dedication of the streets. There might well have been private rights, in respect to streets, in grantees of conveyances made under the plat, although there may have been no complete dedication of the streets to the public by an acceptance of the proffered dedication, as we have before suggested.

The above are the facts which are relied upon as showing an acceptance. We find them to be insufficient, and that there was no acceptance, by the public, of the dedication of the streets.

But with or without such acceptance, the title did not, in our opinion, revert to the plaintiffs, the heirs of Hamilton and Pearsons, on the vacation of the plat. The several lots on the original plat, which abut on the streets sued for, are thirty-one in number. Hamilton and Pearsons, the original proprietors, conveyed away all these lots prior to 1854, the last of the conveyances being of the date February 23, 1853. The first alleged act of acceptance was the passage of the ordinance for the planking of Blue Island avenue, in 1854, so that the acceptance, if one there was, was subsequent to the conveyance of all the lots which abutted on the portion of the streets sued for.

In *Gebhardt* v. *Reeves*, 75 Ill. 301, this court held, where there had been a statutory dedication of streets, and afterwards a conveyance, by the town proprietor, of the lots abutting on the streets, that upon a vacation of the plat subsequently, the title to the streets reverted to the original owner who dedicated the same, and not to the abutting lot owners. But this was upon the ground, that at the time when the conveyances were made the fee of the streets was vested in the municipality, and was not in the original owner. In the present case, however, we find that at the time Hamilton and Pearsons made their conveyances, the fee of the streets was not vested in the municipality, but was in Hamilton and Pearsons, and hence we think a different rule applies here. The doctrine is, that a conveyance of a lot abutting on a highway or street, where there has been no statutory dedication, conveys the grantor's interest in the street to the centre,—so that Hamilton and Pearson's conveyances of the lots (the fee of the streets then being in them,) conveyed the fee in the streets to their grantees, and on vacation of the plat there was no interest in the streets to revert to Hamilton and Pearsons, and none did revert to them or their heirs. We hold, in accordance with the doctrine of the *Littler* case, that an acceptance is necessary to make a complete dedication under the statute; that until acceptance, the fee does not vest in the municipality, but remains in the

original proprietor. Hence a conveyance of the lots before acceptance carries the title to the centre of the street. The fee in the streets passed to the grantees by the conveyances here,—not the fee absolutely, but the fee burdened with the offer of dedication which had been made but not yet accepted. *Gebhardt* v. *Reeves* went upon the assumption that there had been a complete dedication before the conveyances there were made. No question of acceptance arose in the case.

These views render it unnecessary to consider the alleged errors in refusing the two propositions of law submitted by the plaintiffs, and in the admission and rejection of evidence. These all relate solely to the sufficiency of the plat; but this opinion proceeds upon the assumption that the plat was a valid, statutory plat, and that upon that assumption the plaintiffs are not entitled to recover. This makes the rulings in respect to the plat immaterial to the plaintiffs' right of recovery, and so not prejudicial to them.

It is insisted the court erred in permitting Walker and Davis to be made parties defendant. It appears that they were permitted to be joined as defendants because of their warranty of title, they having conveyed the premises to the defendant railroad company by a warranty deed Wait on Actions and Defences, (vol. 3, page 85,) says: "The person from or through whom the defendant derived his title may properly be admitted to defend the title." And see *Redwine* v. *Brown*, 10 Ga. 311.

It does not appear that making these two additional parties defendants, in any way affected the issues, and it is not ground for reversing the judgment.

The judgment of the Superior Court of Cook county will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE SCOTT: I do not concur in this opinion.