**AMERICAN NATIONAL BANK AND TRUST COMPANY, et al., Plaintiffs,**

v.

**HARCROS CHEMICALS, INC., et al., Defendants,**

v.

**WEYERHAEUSER COMPANY, et al., Third–Party Defendants.**

**No. 95 C 3750.**

United States District Court, N.D. Illinois, Eastern Division.

March 6, 1998.

---

Laurence Harvey Levine, Cary R. Perlman, Mary Rose Alexander, Ruth F. Masters, Latham & Watkins, Chicago, IL, Kevin Thomas Kerns, Schopf & Weiss, Chicago, IL, for Plaintiffs.

Steven John Martin, Pretzel & Stouffer, Chtd., Chicago, IL, Michael Gerard Bruton, Price, Tunney, Loughnane, Reiter & Bruton, Chicago, IL, for Harcros Chemicals Inc., a Delaware corporation, defendant.

Robert Leonard Shuftan, Anthony Gerard Hopp, Joseph Francis Madonia, Padmavati Ghanta Klejwa, Lawrence W. Falbe, Wildman, Harrold, Allen & Dixon, Chicago, IL, Jerold Oshinsky, Dickstein, Shapiro, Morin & Oshinsky, LLP, Washington, DC, Robin L. Cohen, Dickstein, Shapiro, Morin & Oshinsky, L.L.P., New York City, for T–H Agriculture & Nutrition Company, a Delaware corporation, defendant.

## MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

### Background

This case originated as one by a number of plaintiffs against T–H Agriculture & Nutrition Co. ("THAN"), Harcros Chemicals, Inc. ("Harcros"), and Willis Hart for an environmental cleanup of property located at 2501 South Damen Avenue in Chicago (the "Damen Site") under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et

seq. The defendants each operated a chemical storage facility at the property between 1969 and 1994. Plaintiff Atwater Capital Group currently owns the property, and Atwater and the other plaintiffs allege that the chemical contents of approximately seventy underground storage tanks located there leaked into the soil and groundwater.[1]

Canal D lies between and adjacent to the eastern boundary of the Damen Site and the western boundary of 2431 South Wolcott Avenue (the "Wolcott Site," this term not to include any portion of Canal D) owned by Weyerhaeuser Company, and extends southward into the West Fork of the South Branch of the Chicago River. Up until 1969, Canal D contained water. In 1969, Edward Hines Lumber Company ("Hines"), Weyerhaeuser's predecessor in interest, and Thompson–Hayward Company, now known as THAN, filled in the canal because of a concern that an oily substance observed on the surface of the canal water, believed to be creosote, might flow into the river.

In 1987, Weyerhaeuser purchased the Wolcott Site from Hines. These two parties executed a Real Estate Sales Contract that described the transfer of several parcels of property including the property located immediately adjacent to and east of Canal D and the easterly half of Canal D. After acquisition, Weyerhaeuser conducted an environmental investigation of the property east of Canal D. Weyerhaeuser found that soil samples demonstrated the presence of numerous chemicals, including naphthalene, benzo(a) anthracene, benzo(b) fluoranthene, benzo(a) pyrene, indeno (1,2,3—cd) pyrene, chrisene, dibenzo (a,h) anthracene, and vinyl chloride, at this property and soil and groundwater samples from Canal D indicated the presence of some of the same chemicals. Weyerhaeuser cleaned the Wolcott Site and received a No Further Remediation Letter from the Illinois Environmental Protection Agency certifying the cleanup and the use of the property for industrial and commercial purposes.

After plaintiffs sued defendants, THAN, Harcros, and Hart filed two separate third-party complaints against numerous other parties including Weyerhaeuser alleging the contours of a multi-site case involving the release of hazardous substances at the Damen Site, the Wolcott Site, and Canal D. Defendants alleged claims for declaratory relief regarding future costs and response costs under CERCLA § 107, 42 U.S.C. § 9607, and contribution under CERCLA § 113, 42 U.S.C. § 9613.[2]

Weyerhaeuser now moves for summary judgment on three alternative grounds: (1) it does not own Canal D; (2) there has been no actual or threatened release of hazardous substances from Canal D or the Weyerhaeuser site to the Damen Site; and (3) it is entitled to the complete defense set forth in CERCLA § 107(b)(3).

### Discussion

Summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A disputed fact is "material" if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is "genuine" if there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 250.

### CERCLA § 107(a) Liability

The central issue in this case is whether defendants can hold Weyerhaeuser liable under CERCLA for past and future response costs associated with the environmental cleanup of the Damen Site and, perhaps, the adjacent property. CERCLA is a broad re-

---

**1.** See my earlier opinion *American Nat'l Bank & Trust v. Harcros*, 1997 WL 281295 (N.D.Ill. May 20, 1997) for a more detailed account of the facts.

**2.** Specifically, THAN asserted claims against Weyerhaeuser for declaratory relief (Count I), response costs (Count II), and contribution (Count III) in its Third Amended Third Party Complaint. Harcros and Hart asserted claims against Weyerhaeuser for contribution (Count III) and declaratory relief (Count IV) in their Third Party Complaint.

sponse and reimbursement statute that imposes strict liability on responsible parties. *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 889 F.2d 1146, 1150 (1st Cir. 1989). Under CERCLA § 113, a party may seek contribution from another person who is liable or potentially liable under CERCLA § 107. *Kerr–McGee Chemical v. Lefton Iron & Metal Co.*, 14 F.3d 321, 326 (7th Cir.1994). Section 107, one of CERCLA's key provisions, permits both government and private party plaintiffs to recover the costs incurred in responding to and cleaning up hazardous substances at contaminated sites. To prove § 107 liability a party must show: (1) the site in question is a "facility" as defined in § 101(9); (2) defendant is a "responsible person" under § 107(a); (3) there has been a "release or threatened release" of hazardous substance as defined in § 101(22); and (4) the release or threatened release has caused plaintiff to incur response costs. *Kerr–McGee Chemical v. Lefton Iron & Metal Co.*, 14 F.3d 321, 325 (7th Cir.1994).

### 1. "Facility"

First, is Canal D a facility? A "facility" is defined by CERCLA as "any building, structure ... or any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located...." § 101(9), 42 U.S.C. § 9601(9). The parties do not dispute that Canal D contains hazardous substances in the soil and water and thus constitutes a facility. In addition, THAN argues that the Wolcott Site is a facility because hazardous substances have been deposited in the soils, and Weyerhaeuser does not dispute it. Therefore, I find both sites meet the definition of a facility under CERCLA.

### 2. "Release"

■ Has there been a release or is there a threat of release at either site? A release is defined under CERCLA as "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment...." § 101(22), 42 U.S.C. § 9601(22). THAN argues that the fact of release cannot be disputed because without a release hazardous substances would not be present at these sites, but they are present. Weyerhaeuser contends, somewhat differently, that there has not been a release or threat of release *from* the Wolcott Site or Canal D *to* the Damen Site. I find that the record shows the presence of hazardous substances at the sites at issue which supports a conclusion that releases have occurred on the sites, even if questions remain as to whether those substances have migrated to the Damen Site.[3]

### 3. "Covered Person"

■ Is Weyerhaeuser a "covered person" under CERCLA § 107(a)? Section 107(a) provides, *inter alia*, that the owner of a "facility" is a covered person. Weyerhaeuser contends that it is not a covered person because it never owned any part of Canal D. Defendants argue that Weyerhaeuser is a covered person because Canal D and the Wolcott Site each constitute a "facility" and Weyerhaeuser owns at least one of those properties. Defendants contend that several facts create a genuine issue of material fact as to whether Weyerhaeuser owns Canal D. First, when Weyerhaeuser purchased property from Hines in 1987 the sales contract covered the "easterly 1/2 of Canal D", and Hines conveyed his property by a special warranty deed. Second, Weyerhaeuser obtained title insurance for the property that included coverage of the canal and recorded the deed. Under general principles of property law, a deed will only convey whatever title or interest the grantor may have. 26 C.J.S. § 118. Defendants' evidence that Hines purported to transfer his interest in the canal to Weyerhaeuser is only relevant if

---

**3.** I note that Weyerhaeuser cleaned the Wolcott Site and received a No Further Remediation Letter from the Illinois Environmental Protection Agency. But this letter did not state that all contaminants have been removed from the site, it merely certified the cleanup and the use of the site for commercial and industrial uses. *See also* 415 ILCS 5/58.10 (describing effects of complete remediation and letter). Weyerhaeuser's expert's testimony that there has been no release and there is no threat of one from the Wolcott Site conflicts with the testimony of defendants' expert, Banaszak, that hazardous substances in the groundwater of the Wolcott Site have been leaching or moving since 1987.

Hines had an interest to transfer in the first place. The only evidence in the record as to the quality of Hines' property interest is the plat of S.J. Walker's Dock Addition to Chicago ("Walker's Plat") recorded on November 18, 1871 and an 1888 Illinois Supreme Court opinion discussing this property. Walker's Plat describes a large piece of property that includes the Damen Site, the Wolcott Site, and Canal D.

 Weyerhaeuser argues that by the plat of 1871 Mr. Walker effected a statutory dedication of Canal D to the City of Chicago and thereby conveyed title in fee. Weyerhaeuser also claims that the Illinois Supreme Court observed that the plat of 1871 was duly acknowledged, recorded, and that it constituted a statutory dedication in *Hamilton v. Chicago, B. & Q. R. Co.*, 124 Ill. 235, 15 N.E. 854 (1888). In actuality, the *Hamilton* decision did not discuss whether Walker's plat effected a statutory dedication, therefore I will look for evidence of one in the record. To effect a statutory dedication, there must be clear and satisfactory proof of the owner's intention to dedicate the property, acceptance of the dedication by the public; and the owner must comply with the provisions of the Illinois Plat Act. *See Semmerling v. Hajek*, 258 Ill.App.3d 180, 196 Ill.Dec. 561, 630 N.E.2d 496, 501 (1994); *du Pont v. Miller*, 310 Ill. 140, 141 N.E. 423, 425 (1923). First, is Walker's Plat proof that Walker intended to dedicate Canal D to public use? "A slip extending into land from a navigable river has a well-known use in commerce and navigation and for the docking of vessels, and when designated on a plat will be presumed to be intended for its ordinary use." *Chicago v. Chicago B. & Q. R. Co.*, 150 N.E. at 253. Here, it is clear from the face of Walker's Plat that Canal D extends from land into the Chicago River and would be useful for servicing the designated lots located along the canal. Further, the way Walker designed the subdivision, he provided every lot in his plat, with only a few exceptions, with access to a canal (Canal A, B, C, or D) on one side and to a railroad on the opposite side. Although Mr. Walker did not specifically designate the canal as "public", he did not designate Ashland Avenue, Paulina Street, or any of the other streets in the plat as public

either. Conversely, when he wanted to reserve a private use he did so. For example, Walker designated a "private railroad street" and wrote "right of way for railroad track reserved" on several of the public streets. In sum, the plat indicates Walker intended that Canal D would be put to its ordinary and public use.

Did the City of Chicago accept the public dedication? Proof of acceptance of the dedication is important because the dedication itself imposes the responsibility and costs of maintaining and improving the property upon the public. *See Hamilton*, 15 N.E. at 857. The only fact Weyerhaeuser presents to show acceptance by Chicago is that a fireboat once used the canal to fight a fire at the Damen Site. But I find use by a fireboat no more indicative of acceptance than I would find a fire truck using a home driveway to fight a fire suggestive that the city accepted the driveway for public use. The fact that the owners of the property on the eastern and western boundaries filled in the canal in 1969 and that a fence currently stands on the property that was Canal D approximately midway between the Damen Site and the Wolcott Site calls into question the ownership of the canal. To decide this issue it would be helpful to know who, if anyone, has paid taxes on this property, for example, and factual information about the use of the canal before it was filled.

The issue of whether Weyerhaeuser owns Canal D is not necessarily dispositive of the larger issue of liability, though, because liability may rest upon the Wolcott Site. It is clear that Weyerhaeuser owns this site, I have already found that this site is a facility, and thus Weyerhaeuser is a "responsible person" as to the Wolcott Site.

4. "Response Costs"

 To establish the final element of the prima facie case for CERCLA liability, defendants must show that they incurred response costs that were necessary and consistent with the National Contingency Plan ("NCP") and reasonable under the circumstances. § 107(a)(4). Response costs include the costs of "such actions as may be neces-

sary to monitor, assess, and evaluate the release or threat of release of hazardous substances." § 101(23), 42 U.S.C. § 9601(23). Initial investigation and monitoring costs are recoverable irrespective of the NCP. *Gache v. Town of Harrison, N.Y.,* 813 F.Supp. 1037, 1046 (S.D.N.Y.1993). Weyerhaeuser can be held liable so long as it caused defendants to incur response costs, even if no actual migration of contaminants from the Wolcott Site or Canal D to the Damen Site is shown. *See Matter of Chicago, Milwaukee, St. Paul & Pac. R. Co.,* 78 F.3d 285, 289–90 (7th Cir. 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 763, 136 L.Ed.2d 710 (1997), (observing that "CERCLA unequivocally imposes strict liability on the current owner of a facility from which there is a release or threat of release, without regard to causation."); *Dedham Water Co. v. Cumberland Farms Dairy, Inc.,* 889 F.2d 1146, 1154 (1st Cir.1989) (same); *United States v. Wade,* 577 F.Supp. 1326 (E.D.Pa.1983) (holding that a CERCLA plaintiff need not directly link acts of each generator defendant to the environmental harm that prompted the cleanup). Thus, Weyerhaeuser's arguments that there is no evidence that contamination migrated from either the Wolcott Site or Canal D to the Damen Site misses the point. The real issue is whether an actual or threatened release caused defendants to incur response costs.

Defendants contend that they have incurred response costs as a result of the contamination at the Wolcott Site and Canal D from, *inter alia,* retaining environmental consultant, Konrad Banszak to investigate and analyze the impact of contamination in and around Canal D. *See* Banszak Aff. at ¶¶ 2–6. Weyerhaeuser argues that all the costs defendants have incurred, including those associated with the off-site investigation of the Damen Site, have been incurred solely in response to the Damen Site and not due to any involvement with the Wolcott Site or Canal D. Weyerhaeuser points out that it is frequently necessary to examine on and off-site groundwater flow and soil samples cases to compare contamination levels and determine on-site remedial strategies, but it contends that this is not a proper basis for

holding off-site property owners liable for on-site contamination. A two-site case can present confusing issues as to what, precisely, caused a party to incur costs, but incurring costs related to contamination on a neighbor's property is not unheard of. In a case similar to this one, a court in this district observed that plaintiff "NutraSweet does not have to prove that [defendant] X–L's release of hazardous waste onto the portion of its own facility adjacent to NutraSweet's property actually and physically migrated and contaminated plaintiff's property; NutraSweet need only show that the release or threatened release of hazardous substances from the facility caused it to incur response costs." *Nutrasweet Co. v. X–L Engineering Co.,* 933 F.Supp. 1409, 1420 (N.D.Ill.1996). After reviewing the record here, I conclude that a material question of fact as to whether the costs defendants have incurred are in response to releases in Canal D, the Wolcott Site, or the Damen Site precludes summary judgment.

Material questions of fact preclude finding that defendants have failed to prove their prima facie case of CERCLA liability against Weyerhaeuser.

### *CERCLA § 107(b)(3) Affirmative Defense*

■ Finally, Weyerhaeuser contends that even if defendants establish a prima facie case of liability, summary judgment is appropriate because it is entitled to the third-party defense set forth in CERCLA § 107(b)(3).[4] Section 107(b)(3) provides a defense for a party that can establish that the actual or threatened release of a hazardous substance and resulting damages were caused solely by

> [A]n act or omission of a third party other than an employee or agent of the defendant, or than one whose *act or omission occurs in connection with a contractual relationship,* existing directly or indirectly, with the defendant.

Section 107(b)(3) is an affirmative defense, so to succeed on this defense Weyerhaeuser has the burden of demonstrating the following elements by a preponderance of the evidence: (1) the actual or threatened release and dam-

---

**4.** Weyerhaeuser only submits this defense in relation to Canal D, even though defendants apparently allege liability based on the Wolcott Site, too.

ages were caused solely by a third party; (2) the third party did not cause the release in connection with a contractual, employment, or agency relationship with Weyerhaeuser; and (3) Weyerhaeuser exercised due care with respect to the hazardous substances and took precautions against foreseeable acts or omissions of the responsible third party. CERCLA § 107(b)(3); *Westfarm Assocs. v. Washington Suburban Sanitary Comm'n*, 66 F.3d 669, 682 (4th Cir.1995), *cert. denied*, 517 U.S. 1103, 116 S.Ct. 1318, 134 L.Ed.2d 471 (1996).

The parties do not dispute that any release of hazardous substances in Canal D was caused solely by unrelated third parties Hines and Thompson–Hayward Chemical Co. when those parties filled the canal in 1969. Defendants contend that Weyerhaeuser cannot establish this defense because it had a contractual relationship with responsible third party Hines and failed to exercise due care.

▆▆▆ The first issue here is whether the real estate contract between Weyerhaeuser and Hines prevents the former party from asserting the § 107(b)(3) defense. There is a split in authority over how broadly to interpret the language in § 107(b)(3) that prohibits parties from asserting the defense when a third party "whose act or omission occurs in connection with a contractual relationship" causes a release and environmental damages. Some courts have held that the phrase "in connection with a contractual relationship" requires more than the mere existence of a contractual relationship between the owner of the "facility" and a responsible third party. *See Westwood Pharmaceuticals v. National Fuel Gas Dist.*, 964 F.2d 85, 91 (2d Cir.1992); *Chatham Steel Corp. v. Brown*, 858 F.Supp. 1130, 1155 n. 18 (N.D.Fla.1994); *Lincoln Properties, Ltd. v. Higgins*, 823 F.Supp. 1528, 1543 (E.D.Cal. 1992); *United States v. A & N Cleaners and Launderers, Inc.*, 788 F.Supp. 1317, 1335 (S.D.N.Y.1992); *Shapiro v. Alexanderson*, 743 F.Supp. 268, 271 (S.D.N.Y.1990). Other courts have construed this section more narrowly by limiting the defense to those persons who have no relation to a third party who causes a release. *See O'Neil v. Picillo*,

682 F.Supp. 706, 728 (D.R.I.1988) (defendant must show that " 'a totally unrelated third party is the sole cause of the release' " to establish a section 107(b)(3) defense) (quoting *United States v. Stringfellow*, 661 F.Supp. 1053, 1061 (C.D.Cal.1987)); *City of Philadelphia v. Stepan Chemical Co.*, 18 Envtl.L.Rep. 20133, 20134, 1987 WL 15214 (E.D.Pa.1987) (defense is "limited … to situations where the responsible party has no connection to the third party"). The Seventh Circuit has not addressed this issue, and I find that the broader interpretation of § 107(b)(3) requiring a connection between the contractual relationship and the act or omission that resulted in the contamination is the most reasonable one based on the plain language of the statute. "To hold that any contractual relationship precludes asserting the defense would render the words 'in connection with' mere surplusage." *Reichhold Chemicals*, 888 F.Supp. at 1130 (N.D.Fla.1995) (citing *A & N Cleaners and Launderers, Inc.*, 788 F.Supp. at 1335). Here, it is true that Weyerhaeuser had a contractual relationship with Hines, the third party allegedly responsible for a release at Canal D, based upon the real estate contract those two parties executed when Weyerhaeuser purchased the Wolcott Site. But there is no evidence in the record that this contract was in any way connected to the contamination in Canal D, and defendants do not suggest that this was the case. Therefore, I find that Weyerhaeuser satisfies this element of the defense.

▆▆▆ The parties also dispute whether Weyerhaeuser exercised due care with respect to the hazardous waste in Canal D. "Section 107(b) requires that [Weyerhaeuser] demonstrate, among other things, that it took precautions to prevent the 'threat of release' or other foreseeable consequences arising from the pollution of the site." *Kerr–McGee Chemical*, 14 F.3d at 325. Defendants argue that Weyerhaeuser did not exercise due care because it ignored the contamination after discovering its presence in Canal D in 1993. Weyerhaeuser contends that it exercised due care by engaging environmental consultant, STS Consultants, Ltd. to analyze and monitor the soil and groundwater in and around

Canal D. STS' investigation and report led Weyerhaeuser to conclude that "there was little chance of contamination migrating away from the canal and onto the Weyerhaeuser property due to the relatively immobile state of the hazardous substances and the low permeability of the surrounding soil." Weyer. Reply Br. at 29. Weyerhaeuser cites *State of New York v. Lashins Arcade Co.* in support of its argument. 91 F.3d 353 (2d Cir.1996). There the court found that defendant Lashins satisfied the due care standard by regularly taking water samples, sending the samples to a laboratory for analysis, issuing instructions to tenants at the property related to the contaminants present, and conducting periodic inspections to assure tenants complied with its instructions. *Id.* at 361. Weyerhaeuser has not presented facts to show that it exercised as much care as the *Lashins* defendant. In *Kerr–McGee Chemical*, the Seventh Circuit found that a land purchaser failed to satisfy the § 107(b) defense because once it became aware of contaminants on its property it made no attempt to remove them or reduce any threat they might pose. 14 F.3d at 325. Here, there is no evidence that Weyerhaeuser attempted to ascertain the nature or degree of the threat posed by the hazardous substances in Canal D. And like the defendant in *Kerr–McGee Chemical*, Weyerhaeuser did not attempt to remove them or take any other positive steps to reduce any threat posed thereby. Based on this, I conclude that a reasonable jury could find that Weyerhaeuser should have exercised more care to prevent adverse consequences arising from the contamination in the canal. This genuine issue of material fact regarding due care precludes Weyerhaeuser from establishing its affirmative defense as a matter of law.

### Conclusion

For the foregoing reasons, Weyerhaeuser's Motion for Summary Judgment is denied.