ALPINE ACRES HOMEOWNERS ASSOCIATION, Plaintiff and Counter-defendant-Appellee, v. OLEN LEONARD *et al.*, Defendants and Counter-plaintiffs-Appellants.

Fourth District No. 4—90—0514

Opinion filed May 9, 1991.

Stuart Dobbs, of Stratton, Dobbs, Nardulli & Lestikow, of Springfield, for appellants.

Thomas P. Burns, of Phelps, Kasten, Verticchio & Ruyle, of Carlinville, for appellee.

JUSTICE GREEN delivered the opinion of the court:

In this case, we must decide whether landowners of property adjacent to a subdivision have a right of passage over a privately maintained road which is located within that subdivision. We affirm the circuit court orders which held that the disputed road is a private road and enjoined the owners of adjacent land from using it.

The road at issue lies entirely within the Alpine Acres Subdivision (Alpine Acres), as illustrated on the appended map. The road's right-of-way begins at a point where it intersects with a public road and proceeds through the subdivision in a northerly direction. The road's right-of-way then turns west and extends to the subdivision's western border. The improved portion of the road does not, however, extend to the western end of its right-of-way; the improvements end a few feet west of the westernmost driveway which abuts the road.

On November 15, 1989, plaintiff Alpine Acres Homeowners Association (Association) filed a complaint for a permanent injunction against defendants Olen Leonard and Ronald P. Baron in the Macoupin County circuit court. The Association alleged it owns the private roads in Alpine Acres, which are private property and may be used only by Alpine Acres residents and their invitees. The complaint further alleged (1) the roads in Alpine Acres are not maintained by the township road commissioner or the Macoupin County superintendent of highways, (2) the roads in Alpine Acres have not been accepted as public roads by the highway commissioner, (3) the roads in Alpine Acres have not been incorporated into the Brighton Township road system, and (4) the roads in Alpine Acres have not been dedicated to public use.

The Association further alleged that without permission or acquiescence of it or of the Alpine Acres residents, defendants recently commenced using the private roads in Alpine Acres to gain ingress to and egress from their real estate which borders on Alpine Acres. The Association alleged defendants' continuing use of the Alpine Acres

roads was a continuing trespass and was contrary to directions of it and the Alpine Acres residents. The Association asserted that as a result of defendants' continued use of the Alpine Acres roads, "the plaintiff has suffered and will be unable to control access to their premises, unable to maintain and regulate the same, and continue to suffer irreparable harm, damage and injury unless the acts and conduct of the defendant [*sic*] complained of above are enjoined." The Association alleged it has no adequate remedy at law and requested defendants be permanently enjoined from using the Alpine Acres roads for ingress to and egress from their properties.

In their answer filed January 31, 1990, defendants admitted the road at issue has not been incorporated into the Macoupin County or Brighton Township systems of publicly maintained roads, but denied the road has not been dedicated to public use, as well as all other salient allegations of plaintiff's complaint.

In a counterclaim which they also filed on January 31, 1990, defendants alleged (1) on April 18, 1972, the road in question was removed from the Macoupin County tax rolls; (2) immediately upon the road being laid out, defendants and other members of the general public began using it for ingress to and egress from real estate owned by one or more of defendants which borders and abuts the westernmost boundary of the roadway; (3) beginning on April 18, 1972, defendants openly and notoriously used the road without interference, until, at an unspecified time, certain landowners in Alpine Acres began interfering with said use; (4) from the inception of the Alpine Acres subdivision in 1972, defendant Leonard has contributed funds to help defray the expenses of maintaining the road and has contributed labor and equipment in furtherance of its maintenance whenever asked to do so; (5) the road in question directly connects with the Macoupin County highway system onto a Macoupin County highway; (6) the road at issue is a public highway within the meaning of section 2—202 of the Illinois Highway Code (Code) (Ill. Rev. Stat. 1989, ch. 121, par. 2—202); and (7) defendants have no adequate remedy at law. Defendants requested (1) a declaratory judgment finding that the disputed road is a highway within the meaning of the Code, and (2) an injunction in aid of the declaratory judgment prohibiting plaintiff from interfering with the quiet use and enjoyment of the road by defendants and other members of the general public.

At a trial held April 30, 1990, Thomas Gazda, the Macoupin County superintendent of highways, testified that in his opinion the roads within Alpine Acres are not public roadways. He also stated that to his knowledge, the county has never assumed any responsibil-

ity for maintenance of the roadway within the subdivision. However, he stated that the road on the subdivision's southern border is a public highway which is at least in part maintained by Brighton Township. On cross-examination, Gazda testified that to his knowledge, no formal attempt has been made to have the road within Alpine Acres made a public road.

Alan Lobbig testified that during or about 1972, he created the Alpine Acres subdivision and filed the subdivision plat. Lobbig stated that he made inquiries concerning the road within the subdivision becoming a public road, but received negative responses from both the township road commissioner and the Macoupin County highway superintendent. Lobbig testified that he informed purchasers of lots in Alpine Acres that in the event maintenance of the road within the subdivision was not assumed by the township, each homeowner in the subdivision was to bear a proportionate share of the cost of maintaining it.

Lobbig stated that probably 10 years previously, he had informed defendant Leonard that the road within Alpine Acres was a private road. He further testified that the improved portion of the road within Alpine Acres ends 50 feet east of the western border of the subdivision, or, in other words, a few feet west of the last residential driveway on the road. Lobbig subsequently suggested he may have informed defendant Leonard that the road was a private road only three or four years previously. Lobbig further testified he recently deeded the real estate occupied by the disputed road to the Association, and that he had taken no affirmative steps to have the real estate containing the road removed from the tax rolls.

On cross-examination, Lobbig indicated that when the road within Alpine Acres was established, he intended that it be available for use by Alpine Acres residents and their invitees. Also, Lobbig stated that at one time defendant Leonard owned the real estate immediately to the west and north of Alpine Acres, and that after the road through the subdivision became available, Leonard began using it to get his machinery on and off his property to the west, which he owned when the subdivision was platted. Lobbig testified that he and some of the subdivision residents hauled in rock and otherwise maintained the disputed road. He acknowledged that defendant Leonard plowed snow on the road. Lobbig further stated that he did not file a petition or do anything else of a formal nature to have the road declared a public highway.

The Association's next witness was Glenn Linder, who resides at the west end of Alpine Acres, on the south side of the disputed road.

Linder testified that at one time, defendant Leonard levelled and filled the unimproved portion of the road. Linder also stated that on two occasions, Leonard removed barricades and obstructions which had been placed at the end of the road. Linder further testified that on occasion, Leonard "bladed" the improved portion of the road. Linder stated that he once told Leonard that he "wanted to keep it [the disputed road] as a private road." Linder indicated the reason for his feeling this way was the possibility of increased traffic which would result from construction of a new subdivision adjacent to the west side of Alpine Acres.

Marsha Wilson, another Alpine Acres resident, indicated her concerns about the disputed road becoming available for public use were the same as those voiced by Linder. On cross-examination, Wilson stated barricades were placed at the end of the road for the first time in 1986. Wilson also testified that she had engaged in fruitless discussions with defendant Leonard concerning her possible purchase of some of his adjoining property. Wilson stated the Association was incorporated on June 14, 1989.

Testifying in his own behalf, defendant Leonard indicated he owns or has owned property which lies to the west and north of Alpine Acres, and that some of this property has been sold to defendant Baron. He further stated that before the disputed road was platted "there was a field road that went through a part of this road." He testified that since the disputed road was platted, he used it for "[a]ny purpose I needed to go to plant my crops, check my crops, check cattle, haul cattle, visitors come down, hunt, trap, picked berries, mushrooms, whatever is necessary, anybody that wants to use it is welcome, never, never no stoppage until recently."

Leonard stated that he first sold property adjacent to Alpine Acres to Baron "[p]robably about 3 years ago," and that Baron has an option to purchase additional property. If Baron exercises this option, he will own everything to the west of Alpine Acres that is now owned by Leonard. Leonard also stated that church groups, hunters, and people participating in hayrides use the road in question for access to his property. Furthermore, he testified that he has "bladed" the disputed road on numerous occasions, "[f]rom day one up until [a] couple [of] years ago when they built the blockade." Leonard also stated that he had previously paid maintenance expenses with respect to the road.

Leonard testified that his access to the disputed road was first interfered with about six to eight years ago, when about a half-dozen short steel posts were placed in the road. Leonard removed these

posts. Leonard's use of the road was subsequently obstructed in approximately August 1988, when a fence and posts were placed across the west end of road. He likewise removed this barricade. Leonard stated there was no change in his use of the road after it was barricaded for the first time.

On cross-examination, Leonard testified that Lobbig had never asked him not to use the disputed road, but had told him that it was a private road.

Several witnesses, including defendant Baron, testified on behalf of defendants that they and others had used the disputed road on numerous occasions since 1972 to gain access to land adjacent to the western boundary of Alpine Acres. Defendant Baron testified on cross-examination that before purchasing property west of Alpine Acres in the spring of 1988, he reviewed a legal opinion prepared by defendant Leonard's attorney concerning the status of the disputed road. Baron further stated that traffic on the road has probably increased as a result of his purchase of land west of Alpine Acres.

In a judgment order entered June 28, 1990, the circuit court (1) held that the road through Alpine Acres is a private road and is not a public highway, (2) ordered that a permanent injunction be entered in the Association's favor, and (3) ordered that defendants take nothing by their counterclaim. A permanent injunction order entered July 5, 1990, enjoined defendants, their agents, attorneys, and all persons in active concert and participation with them from using the road through Alpine Acres. This order was stayed pending appeal.

In appealing the circuit court's injunction order and denial of relief on their counterclaim, defendants argue that the evidence establishes that the road through Alpine Acres became a public highway by virtue of both "An Act to revise the law in relation to plats" (Ill. Rev. Stat. 1989, ch. 109, pars. 1 through 10.1) (hereinafter the Plat Act) and the Code (Ill. Rev. Stat. 1989, ch. 121, par. 1—101 *et seq.*). The portion of defendants' argument premised on the Code relies exclusively on sections 2—202 (listed under "Division 2. Definitions") and 6—325 of that Code, which provide:

> "Highway—any public way for vehicular travel which has been laid out in pursuance of any law of this State, or of the Territory of Illinois, or which has been established by dedication, or used by the public as a highway for 15 years, or which has been or may be laid out and connect a subdivision or platted land with a public highway and which has been dedicated for the use of the owners of the land included in the subdivision or platted land where there has been an acceptance and use un-

der such dedication by such owners, and which has not been vacated in pursuance of law. The term 'highway' includes rights of way, bridges, drainage structures, signs, guard rails, protective structures and all other structures and appurtenances necessary or convenient for vehicular traffic. A highway in a rural area may be called a 'road', while a highway in a municipal area may be called a 'street'." Ill. Rev. Stat. 1989, ch. 121, par. 2—202.

"In counties having less than 3,000,000 inhabitants, roads or streets in platted subdivisions and dedicated to public use shall be included in and incorporated into the township or district road system without any hearing or petition therefor required by the preceding Sections of this Division, when and if such roads or streets conform to the rules, specifications and regulations regarding location, width, grades, surface and drainage structures prepared by the county superintendent of highways and adopted by the county board. The highway commissioner shall determine when such dedicated roads and streets so conform and shall thereupon make an order to incorporate them into the township or district road system and file one copy of such order in the office of the district clerk and one copy with the county superintendent of highways. If the highway commissioner refuses or fails to make such an order, any 3 interested persons may appeal to the county superintendent of highways to determine if such roads and streets so conform, and if his finding is favorable, he shall make an order to incorporate them into the township or district road system and shall file such order in the office of the district clerk." (Ill. Rev. Stat. 1989, ch. 121, par. 6—325.)

Defendants argue that since the road in issue connects a platted subdivision to a public highway, and has been dedicated to the use of residents of the subdivision and accepted by them, it is a public road by virtue of section 2—202. Defendants assert that the facts that the road has not been accepted by the township road commissioner and is not publicly maintained are of no consequence in determining whether the public has a right to use it. Defendants further contend that section 6—325 recognizes the road as public.

■ In order for a road to constitute a "highway" within the meaning of section 2—202, it must fall within one of the alternative definitions of a highway set forth in that section. As we will later discuss, no portion of the disputed road within Alpine Acres has been dedicated to public use by means of either a statutory or a common

law dedication. Moreover, there is no evidence that the road was otherwise laid out in pursuance of any State or territorial law. Thus, the disputed road is not a highway within the meaning of the first two definitions of that term contained in section 2—202.

For purposes of addressing the remaining definitions of a highway contained in section 2—202, the question crucial to the outcome of this appeal is the status of the unimproved portion of the disputed road, which commences a few feet west of the westernmost driveway abutting the road and extends to the western boundary of Alpine Acres. If this portion of the road is not a highway, it necessarily follows that section 2—202 does not confer upon defendants a right to use the disputed road as a means of ingress to and egress from their property adjacent to the west side of Alpine Acres.

■■ ■ For a road to be deemed a highway under the 15-year provision of section 2—202, a road must be "shown *** [to have] been openly and notoriously used as an open and public highway in common by the public continuously without interruption" for a 15-year period. (*Swinford v. Roper* (1945), 389 Ill. 340, 343-44, 59 N.E.2d 863, 864-65; see also *Zacny v. Sasyk* (1975), 30 Ill. App. 3d 93, 332 N.E.2d 568.) The evidence in this case does not establish that defendants used the westernmost portion of the disputed road without interruption for a period of 15 years. The evidence establishes that Leonard's use of the road through Alpine Acres began, at its earliest, in 1972. Leonard testified that his use of the road was first interfered with six to eight years previously, which would have been during the years 1982 through 1984. Thus, Leonard's testimony itself disproves the proposition that the public enjoyed uninterrupted use of the disputed road for a 15-year period.

■ We further conclude that the westernmost portion of the disputed road is not a highway within the meaning of the final definition of that term contained in section 2—202. As previously indicated, no driveways abut the westernmost portion of the road through Alpine Acres, which is nevertheless the most important part of the road for purposes of our decision regarding the applicability of section 2—202. Because of the lack of any evidence that Alpine Acres residents use the westernmost portion of the disputed road as a means of access to their properties, it cannot be said that that portion of the road connects a subdivision or platted land with a public highway. For the foregoing reasons, we hold that at least the westernmost portion of the disputed road within Alpine Acres is not a highway within the meaning of section 2—202 of the Code.

█ We further conclude that section 6—325 of the Code affords no basis for holding that the public has a right to use the road at issue. That section merely prescribes procedures for inclusion in public road systems of roads which have been dedicated to public use. It says nothing about what factors confer upon the public the right to use a particular road.

In addition to relying on provisions of the Code, defendants contend that the public has a right to use the disputed road as a result of it being dedicated to public use. This argument is in part premised on the Plat Act, which provides that when land is subdivided into two or more plots, any one of which is less than five acres, the owner must have the land platted. The plat:

"[M]ust particularly describe and set forth all public streets, alleys, ways for public service facilities, ways for utility services and community antenna television systems, parks, playgrounds, school grounds or other public grounds, and all the tracts, parcels, lots or blocks, and [number] all such lots, blocks or parcels by progressive numbers, giving their precise dimensions." (Ill. Rev. Stat. 1989, ch. 109, par. 1(a).)

Upon the acknowledgment and recording of a plat, it:

"[S]hall be held in all courts to be a conveyance in fee simple of such portions of the premises platted as are marked or noted on such plat as donated or granted to the public, or any person, religious society, corporation or body politic, and as a general warranty against the donor, his or her heirs and representatives, to such donee or grantee, for their use or for the use and purposes therein named or intended, and for no other use or purpose; and the premises intended for any street, alley, way, common or other public use in any city, village or town, or addition thereto, shall be held in the corporate name thereof in trust to and for the uses and purposes set forth or intended." (Ill. Rev. Stat. 1989, ch. 109, par. 3.)

Defendants assert that the road through Alpine Acres was dedicated to public use by means of (1) its being marked on the subdivision plat, (2) the language of the plat, and (3) the acceptance of the plat by the county. Defendants further argue that use of the road by them and others constituted public acceptance of the dedication. Defendants maintain that the actions of the Association and Alpine Acres residents years after the road was platted and made available for public use cannot diminish the rights of the public to use the road, and that the Association acquired no rights in the road which are incompatible with the right of the public to use it.

In its argument on appeal, the Association first questions whether there can be a statutory dedication to public use of a road located outside of a municipality. The Association asserts that assuming *arguendo* this can be done, the Alpine Acres plat does not contain sufficient *indicia* of a donative intent to effect a dedication to public use of the disputed road, and it is questionable whether the plat was properly accepted by the Macoupin County board. The Association also argues that based on the evidence presented at trial, the circuit court could properly have concluded that there was insufficient proof of donative intent to establish a common law dedication to public use of the disputed road.

In their reply argument, defendants acknowledge that a county is incapable of accepting a fee dedication of a road for public use and, thus, the Association owns the fee of the road which runs through Alpine Acres. They maintain that there has nevertheless been compliance with all of the prerequisites for granting the public a right to use the disputed road. In support of this argument, defendants assert that the Plat Act does not on its face require the use of words of dedication in order for a dedication to public use to be effective, and that there is nothing on the Alpine Acres plat which is inconsistent with an intent to dedicate the road within the subdivision to public use. Defendants further argue that section 6—325 of the Code does not require that all rural public roads be maintained at public expense. Also, defendants note that the road's right-of-way is not included in the individual lots in Alpine Acres. Finally, defendants assert that there is clear evidence that the Macoupin County board accepted the Alpine Acres plat.

■ In order to effect a statutory dedication, the provisions of the Plat Act must be fully complied with, and the plat must clearly indicate a donation to the public of the real estate in question. (*Sundstrom v. Village of Oak Park* (1940), 374 Ill. 632, 30 N.E.2d 58; *Reiman v. Kale* (1980), 83 Ill. App. 3d 773, 403 N.E.2d 1275.) Under the Plat Act, a court is limited to an examination of the plat and the marks and notations appearing on it in determining whether there was a valid statutory dedication of land to a public use. *Wooded Shores Property Owners Association, Inc. v. Mathews* (1976), 37 Ill. App. 3d 334, 345 N.E.2d 186.

■ The plat of the Alpine Acres subdivision indicates that a strip of land at the south end of Alpine Acres is dedicated to road purposes, and this strip is clearly marked "Dedicated to Roadway." By contrast, one segment of the disputed road within the subdivision is marked "Access Road," while another segment of this road is simply

marked "Roadway." The use of the word "dedicated" with respect to the road on the south side of the subdivision, and the failure to use this word in the description of the road within the subdivision, indicates an intent not to donate or dedicate the latter road to public use. The Alpine Acres plat does not establish that there was a statutory dedication of the road within the subdivision to public use.

If there has been no statutory dedication of real estate to a public use, the facts nevertheless may be sufficient to establish a common law dedication. Two factors must be present to support a finding of a common law dedication: (1) an owner of real estate must intend to donate it for a public use, and (2) the public must accept the dedication. The most important requirement is donative intent, which may be manifested by a formal dedication or by acts of the donor from which the intent may be so fairly presumed as to equitably estop the donor from denying a donative intent. Proof of acts relied upon to establish a common law dedication must be clear, unequivocal, and unambiguous. (*People ex rel. Markgraff v. Rosenfield* (1943), 383 Ill. 468, 50 N.E.2d 479.) The evidence presented at trial supports the conclusion that there has been no common law dedication to public use of the road within Alpine Acres.

Alan Lobbig, who was responsible for the creation of Alpine Acres and recorded the subdivision plat, stated that when the subdivision was laid out, there was an existing public road at its south end, which was still there at the time of trial. He stated that the subdivision plat reflected this public road and made a distinction between it and the internal road. Lobbig also stated he did not tell any of the purchasers of lots in the subdivision that the internal road would be a public road. Lobbig further testified that probably 10 years before the trial of the cause, he informed defendant Leonard that the disputed road was a private road and that perhaps six years prior to the trial he first placed obstacles at the end of the road, and he subsequently replaced them several times after Leonard removed them.

On cross-examination, Lobbig stated that when he caused the disputed road to be laid out, he intended that it be available for use by all those who had homes in Alpine Acres, as well as by persons doing business with and making deliveries to subdivision residents, and by persons who were interested in purchasing property in the subdivision.

Lobbig's testimony unequivocally establishes that he intended the disputed road to be a private road available only for the use of Alpine Acres residents and their invitees. In view of the strong evidence of lack of intent to effect a common law dedication, the evidence of fre-

quent use of the road as a means of ingress to and egress from defendants' adjacent property is insufficient to establish that a common law dedication occurred. The *Markgraff* court stated the following with regard to the effect of use of roads by those unauthorized to do so:

> "Acquiescence with the knowledge of use by the public, and without objection, is not conclusive evidence of intent to dedicate, for such evidence may be rebutted. (*Kyle v. Town of Logan*, 87 Ill. 64.) Acquiescence in a permissive use can never be said to show an intent to dedicate land to public use. (*Leonard v. Pearce*, 348 Ill. 518[, 181 N.E. 399].)" *Markgraff*, 383 Ill. at 474, 50 N.E.2d at 482.

 █ Nor is the removal from the tax rolls of the land containing the road within Alpine Acres determinative with regard to whether it was dedicated to public use. The removal of real estate from the tax rolls is an evidentiary fact which may be considered in determining whether a dedication to public use has occurred, but it may not be conclusive as to this matter. (*Village of Benld v. Dorsey* (1924), 311 Ill. 192, 142 N.E. 563.) Here, the evidentiary force of the removal of the disputed road's right-of-way from the tax rolls is outweighed by Lobbig's clear testimony which establishes he did not intend to dedicate this land to public use.

None of the cases relied upon by defendants support their position that the road here at issue has been dedicated to public use. In *Village of Benld*, there was, unlike in the present case, a clear manifestation of intent to donate a parcel of land for use by the public at large, rather than for use only by adjoining landowners and their invitees. The court in *Road District No. 4 v. Frailey* (1924), 313 Ill. 568, 145 N.E. 195, did hold that designation of a road as a private road does not affect its character, if in fact it is a public road or highway. However, the evidence in this case strongly supports the conclusion that the road within Alpine Acres is, in fact, a private road rather than a public road. Finally, in *McCue v. Berge* (1944), 385 Ill. 292, 52 N.E.2d 789, a deed specifically reserved the land containing the road in issue either " 'for the purposes of a public street' " or " 'for a public street.' " (*McCue*, 385 Ill. at 294-95, 52 N.E.2d at 791.) In the present case, there is no document containing similar language.

 The westernmost portion of the disputed road through the Alpine Acres subdivision is not a highway within the meaning of the Code, and the evidence establishes that the road has not been dedi-

cated to public use by means of either a statutory or a common law dedication. For these reasons, we affirm the circuit court's decision.

Affirmed.

SPITZ and KNECHT, JJ., concur.

APPENDIX

↑
**N**

Land owned by defendant Leonard

Land owned by defendants Leonard and Baron

Lot 13 Lot 12 Lot 11

Lot 1

Lot 2

"Roadway"*

Lot 8 Lot 9 Lot 10

Lot 3

Lot 4

Lot 7 Lot 6 Lot 5

"Dedicated to Roadway"

*Disputed Road