JAMES SEMMERLING, Lake Villa Township Highway Commissioner, Plaintiff and Counterdefendant-Appellant, v. ROBERT HAJEK, Defendant and Counterplaintiff-Appellee.

Second District   No. 2—92—1369

Opinion filed March 8, 1994.

Ludolph J. Wilson, of Wilson-Hall, P.C., of Waukegan, for appellant.

Paul D. Frenz, of McBride, Baker & Coles, of Chicago, for appellee.

JUSTICE COLWELL delivered the opinion of the court:

James Semmerling, the Lake Villa Township highway commissioner and the plaintiff and counterdefendant in this case (plaintiff), appeals from an order of the circuit court of Lake County declaring the width of a prescriptive public highway easement to be the width of the paved road plus six feet on either side. On appeal, plaintiff argues that the easement should be extended to include the entire 40-foot width of the right-of-way designated on the subdivision plat. In particular, plaintiff claims that (1) the Illinois Highway Code (Code) (605 ILCS 5/1—101 *et seq.* (West 1992)) requires that the easement be at least 40 feet wide; (2) the trial court's ruling is against the manifest weight of the evidence; and (3) the evidence demonstrates that the entire 40-foot strip of land has been dedicated to public use. We affirm.

The facts of this case are gleaned from a bystander's report. The road at issue is Christiansen Avenue (the road), which is located in the Cedar Park subdivision in Lake Villa Township (the Township). The parties entered a plat of the subdivision into evidence. The plat shows the road lying within a 40-foot wide "driveway" running east to west from Munn Road to Crooked Lake. The record on appeal does not reveal the width of the road. The plat designates Munn Road as a "driveway for use of lot owners."

Defendant and counterplaintiff, Robert Hajek (defendant), owns a parcel of land immediately to the north of the road. The east border of his property is located 250 feet west of Munn Road. The west border of defendant's property is the lake. The parties submitted photographs of the road that reveal that the road is paved up to a point 65 feet west of defendant's east property line. Beyond that point, the road is a dirt path. The plat does not reveal the location of the terminus of the paved portion of the road. The paved and unpaved portions of the road are separated by a gate which has a sign reading "Private" and "No Parking."

Wood fences parallel the road on each side. The entire width of the road is not paved. The paved portion of the road is slightly elevated, and between the paved portion of the road and the fences are grassy strips of land. There is also a fence running south to north along the east border of defendant's property. The fence runs from the north end of the paved road and meets the fence which runs along the north end of the driveway. There was a spray-painted line running across the paved road which corresponded to the east border of defendant's property. Also spray painted on the paved road is the message "PRIVATE." The area in dispute is that portion of the road running from the east border of defendant's property to the gate.

Defendant testified that he purchased the property in 1991 from a person who had obtained it through a tax sale. Defendant stated he had a constant problem with people parking in the area. In response, defendant erected the fences and placed "no trespassing" signs along the road. He stated that the fences running parallel to the road sit on the borders of the driveway as defined in the subdivision plat. Defendant also admitted to painting the pavement and piling and burning leaves on the pavement. According to defendant, the Township paved the road in 1988. Prior to this, the Township had laid a gravel road and oiled the road.

Plaintiff testified that he has been the Township highway commissioner since 1982. He also testified that the Township road district paved, maintained, plowed, and kept the road clear for drainage. The road district's maintenance of the road extended from Munn Road to the gate. This maintenance also included mowing the grass on either side of the road. There were drainage ditches on either side of the road. According to plaintiff, the snowplow drivers needed space to turn around their plows and they generally turned the plows around at the end of the road near the gate. Plaintiff finally testified to the costs the road district incurred when it removed the "graffiti," the leaves, and the fence that defendant placed on the driveway.

M. Schneider testified that he was the Township highway commissioner from 1976 to 1982. He considered the road to be a public road. While he was commissioner, the road district laid gravel, maintained the "shoulders and drain," and plowed the road. He also testified that he has been familiar with the road since childhood and that the road was generally used by the public to access the lake. Also, the Department of Conservation used the road to access the lake for the purpose of conducting studies and surveys of the lake. Emergency vehicles also used the road to gain access to the lake. Schneider finally testified that he participated in a lawsuit seeking to declare the "property's" tax status void. The court in that case ruled the "property" public and tax-exempt for all time.

Edward Quirsfeld testified that he has been a resident of the Cedar Park subdivision since 1972. Originally, the subdivision's homeowners' association maintained the road because it was an easement allowing the homeowners access to the lake. However, early in the 1970's, the Township began maintaining the road. This included plowing, grading, and supplying gravel to the water's edge. Quirsfeld was president of the homeowners' association when the court declared the property tax-exempt. He testified that, in 1988, the homeowners' association erected a gate across the road with a lock

because of the excessive use of the road by the general public. Thereafter, the homeowners' association charged an admission fee to members of the homeowners' association who wished to gain access to the lake. As a result, the public's use of the road was reduced.

Carol Hetzel testified that she has owned property at the corner of Munn Road and Christiansen Avenue since 1990. She has been familiar with that area since 1958. Hetzel testified that the public had access to and used the road until about 1991.

David Bycroft testified that he is a construction land surveyor for the Lake County Land Survey. He also testified that the plat submitted by the parties purported to be the plat of the Cedar Park subdivision. Although he did not draw up the plat himself, he claimed that the plat was drawn from Lake County Land Survey office records. He never compared the office records to the official records to verify the plat's accuracy.

The parties stipulated to the affidavit of Clarence Hanson. Hanson's affidavit stated that Hanson was the Township highway commissioner from 1964 to 1975 and was an employee of the Township highway department from 1954 to 1964. The affidavit further stated that the Township has "continuously and openly" maintained the road since 1954.

Plaintiff filed a complaint in small claims court alleging that "[defendant] is indebted to [plaintiff] in the sum of $320.00 for obstructing and damaging township road." Defendant counterclaimed for trespass, alleging that he owned the parcel of land in dispute. After a trial, the circuit court found that the "section of roadway in question has been used by the public as a public roadway for fifteen years." Accordingly, the trial court dismissed defendant's trespass claim. The trial court further found that plaintiff failed to prove that he complied with the requirements of section 9—117 of the Code (605 ILCS 5/9—117 (West 1992)), which governs the recovery of damages for the removal of highway obstructions.

Defendant then filed a motion for clarification, requesting that the trial court define the boundaries of the prescriptive highway easement. Defendant claimed that the evidence demonstrated that the use and maintenance of the road were limited to the paved portion of the driveway and that the surrounding grassy areas were not used in any way by the Township or the public. Accordingly, defendant requested an order defining the easement as including only the paved portion of the road and not the surrounding grassy areas. The trial court entered an order defining "the roadway to include the paved portion and six feet on either side of said paved portion." This timely appeal followed.

Neither party disputes the trial court's finding that the evidence demonstrated the existence of a prescriptive public highway easement under section 2—202 of the Code. Section 2—202 defines "[h]ighway" in part as "any public way for vehicular travel which has been *** used by the public as a highway for 15 years." (605 ILCS 5/2—202 (West 1992).) Plaintiff takes issue, however, with the trial court's finding that the width of the easement equals the width of the paved road plus 12 feet. Plaintiff claims the trial court should have defined the prescriptive easement to include the entire 40-foot width of the road as marked on the subdivision plat.

■ Plaintiff first argues that section 6—301 of the Code requires that a roadway be at least 40 feet wide. This section is contained in article 6, division 3, of the Code (605 ILCS 5/6—301 et seq. (West 1992)) and states that "[a]ll township and district roads established under this Division of this Code shall not be less than 40 feet in width." (605 ILCS 5/6—301 (West 1992).) The cardinal rule of statutory construction is that a court should ascertain and give effect to the intention of the legislature and that the legislative intent should be sought primarily from the language used in the statute. *Abrahamson v. Illinois Department of Professional Regulation* (1992), 153 Ill. 2d 76, 91.

Section 6—301 clearly states that the 40-foot width requirement applies only to roads established under article 6, division 3, of the Code. This division of the Code established a process whereby a specified number of voters or the Illinois Department of Transportation may request a local highway commissioner to lay out a new township or district road. (See 605 ILCS 5/6—303 (West 1992).) This division does not govern the establishment of public highways by prescriptive easement. Therefore, we conclude that section 6—301 does not govern the width of public highways established by prescriptive easement and has no bearing on the issue presented by this appeal.

■ Because the remaining issues that plaintiff raises turn largely on the subtle facts of the case, we must first address the deficiencies of the record on appeal. The record of the trial consists of the stipulated subdivision plat, the photographs the parties entered into evidence, Hanson's affidavit, and the bystander's report summarizing the witnesses' testimony. The bystander's report is a three-page summary of the testimony of five witnesses. These summaries do not always clearly reveal what a particular witness' testimony was. Plaintiff, as appellant, has the burden of presenting a sufficiently complete record of the proceedings at trial, and, in the absence of a complete record, it will be presumed that the trial court's order

conformed to the law and had a sufficient factual basis. (*Foutch v. O'Bryant* (1984), 99 Ill. 2d 389, 391-92.) Therefore, we will construe all ambiguities in the record against plaintiff.

■ Plaintiff next argues that the trial court's finding regarding the width of the prescriptive easement is against the manifest weight of the evidence. The location of the limits of a public road is a question of fact (*City of Highland Park v. Driscoll* (1962), 24 Ill. 2d 281, 283), and a trial court's finding regarding the limits of a prescriptive public highway easement will not be disturbed on review unless it is against the manifest weight of the evidence. *National Boulevard Bank v. Department of Transportation* (1976), 42 Ill. App. 3d 820, 824.

Plaintiff claims that the trial court's ruling that the roadway extends merely six feet from either side of the pavement is logically inconsistent with its ruling that the road district committed no trespass when it removed the obstructions from the road. According to plaintiff, the road district had to move beyond the limits of the easement to remove the fence and the sign. The bystander's report reveals, however, that plaintiff never testified about removing any signs, and there was no testimony about the exact location of any signs. The record does not support plaintiff's claim that the road district had to enter onto defendant's property to remove signs.

The fence that the road district removed was laid along defendant's east property border. It extended from the north edge of the pavement to beyond the six-foot limit. The evidence reveals that the road district did have to enter on that part of defendant's property not subject to the easement. However, the trial court dismissed defendant's trespass action before it ruled on the motion for clarification. It is possible that, if defendant had moved for a reconsideration of the dismissal of his trespass action, the trial court may have granted relief based on its definition of the limits of the easement. Because of the timing of the trial court's orders in this cause, we cannot conclude that its findings regarding the trespass claim and the width of the easement are logically inconsistent.

Plaintiff next claims that the evidence demonstrated that the public used the entire 40-foot-wide "driveway." Plaintiff points to the evidence that the Township plowed the road, mowed the grassy areas adjacent to the road, and kept those areas clear for drainage purposes; that the snowplows need room at the end of the road near the gate to turn around; and that the members of the general public often parked their cars in the area.

The extent of a prescriptive highway easement is determined in part by the public's use of the area in question as a highway. The

party asserting the existence of a prescriptive highway easement must demonstrate, *inter alia*, that the public's use is continuous and uninterrupted and along a definite and specific line of travel. (*National Boulevard Bank*, 42 Ill. App. 3d at 824.) Also, a prescriptive highway easement need not be limited to the area that the public actually uses and may include additional land at or beneath the surface that is essential to make the easement effective. *Driscoll*, 24 Ill. 2d at 283.

In *Driscoll* the court upheld the trial court's finding that the prescriptive easement extended beyond the gravel road used by the public and included drainage ditches running along both sides of the road. The court rejected, however, the city's claim that an 80-foot-wide right-of-way was established because there was no evidence showing public use of any land for road purposes beyond the limits of the drainage ditches. (*Driscoll*, 24 Ill. 2d at 283.) Here, there is similarly no evidence that the public used the grassy areas on either side of the road for road purposes. To the contrary, the evidence established that public use was limited to the paved portion of the road. The trial court certainly was not required to conclude in the absence of any other evidence that, just because the Township mowed those areas, the prescriptive easement encompassed those areas.

The trial court could also reasonably conclude that the six-foot strips on either side of the road were sufficient to allow for proper drainage, public parking, and the ingress and egress of road maintenance vehicles. Plaintiff presented no evidence regarding how much space the road district required to turn its snowplows around or exactly where members of the public parked their cars. There is no other evidence that the land beyond the six-foot limits was required for proper maintenance of the road or otherwise essential to make the easement effective. Accordingly, we conclude that the trial court's finding regarding the width of the prescriptive highway easement is not against the manifest weight of the evidence.

Lastly, plaintiff contends that the subdivision plat reveals that the entire 40-foot tract of land designated as a driveway had been dedicated for public use. We note initially that, while plaintiff raised this issue in the trial court, he raised it for the first time on appeal in his reply brief. Plaintiff did not advance this argument as a response to any arguments raised in appellee's brief. Supreme Court Rule 341 requires the appellant to limit his reply brief to responding to arguments presented in the appellee's brief (134 Ill. 2d R. 341(g)) and states that points not argued in the appellant's original brief are waived and may not be raised in the reply brief (134 Ill. 2d R. 341(e)(7)). We will address this argument, however, because it can readily be disposed of without the aid of a response by defendant.

Section 2—202 of the Code also defines "[h]ighway" in part as any public way for vehicular travel "which has been established by dedication." (605 ILCS 5/2—202 (West 1992).) The Plat Act provides that, when an owner of land subdivides it into two or more plots, any one of which is less than five acres, the owner must prepare a subdivision plat that sets forth all lots, streets, alleys, parks, and other public facilities. (765 ILCS 205/1 (West 1992).) The Plat Act provides further that the acknowledgment and recording of such a plat "shall be held in all courts to be a conveyance in fee simple of such portions of the premises platted as are marked or noted on such plat as donated or granted to the public." 765 ILCS 205/3 (West 1992).

In order to effect a statutory dedication, the provisions of the Plat Act must be complied with fully, and the plat must clearly indicate a donation to the public of the real estate in question. (*Sundstrom v. Village of Oak Park* (1940), 374 Ill. 632, 638; *Alpine Acres Homeowners Association v. Leonard* (1991), 213 Ill. App. 3d 634, 644.) The plat here designates Munn Road as a "driveway for use of lot owners" and designates the disputed parcel as a "driveway." The disputed parcel is not marked in any manner as donated or dedicated to the public. The designation of the parcel as merely a "driveway" is not a clear indication of an intent to dedicate the parcel to public use. Additionally, the mere fact that a plat indicates the presence of streets is insufficient to effect a statutory dedication because there is no general prohibition against private streets. *Reiman v. Kale* (1980), 83 Ill. App. 3d 773, 776.

If there has been no statutory dedication, the facts of the case may nevertheless be sufficient to establish a common-law dedication. The existence of a common-law dedication must be demonstrated by clear and unequivocal evidence that the owner of the real estate intended to donate the parcel for a public use and that the public accepted the dedication. (*Alpine Acres*, 213 Ill. App. 3d at 645.) Here, the only evidence concerning any landowner's intent was defendant's attempts to prevent the public from using any portion of the disputed parcel. This certainly does not indicate an intent to dedicate the disputed parcel to the public. There is no evidence of any prior owner's intent to dedicate the parcel to the public. Therefore, there was insufficient evidence of a donative intent to effect a common-law dedication.

We also note that the parcel's removal from the tax rolls is a factor which may be considered in determining the existence of a common-law dedication, but it is not conclusive. (*Alpine Acres*, 213 Ill. App. 3d at 646.) The record reveals only that the "road" was

declared tax exempt and is unclear whether the entire parcel marked "driveway" was declared exempt or merely the road itself. Therefore, the record is inadequate, and we are unable to draw any conclusions regarding the proper weight to be accorded the tax-exempt status of the disputed parcel.

Based on all of the foregoing, we conclude that the trial court committed no error when it established the width of the prescriptive highway easement as the width of the paved road plus six feet on either side of the paved road.

Accordingly, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

DOYLE and PECCARELLI, JJ., concur.