LIMESTONE DEVELOPMENT CORPORATION, Plaintiff-Appellee, v. THE VILLAGE OF LEMONT *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 1—95—2781

Opinion filed September 25, 1996.—Rehearing denied November 25, 1996.

Butler, Rubin, Saltarelli & Boyd, of Chicago (Gerald G. Saltarelli and Louis J. Aurichio, of counsel), for appellant K.A. Steel Chemicals, Inc.

Herbas, Sotos, Condon & Bersani, P.C., of Chicago (Michael D. Bersani, of counsel), for appellant Village of Lemont.

McDermott & McDermott, Ltd., of Matteson (David G. McDermott, of counsel), for appellee.

JUSTICE CERDA delivered the opinion of the court:

This dispute involves the use of an unpaved road that leads from Main Street in Lemont to a nearby quarry area and to the property of plaintiff, Limestone Development Corporation (LDC). The issue in this preliminary injunction case is whether the petitioner made a fair showing that the canal road became a public highway by prescriptive easement, implied easement, statutory dedication or common law dedication.

There are three sections of the road. The first section, which begins at the railroad crossing adjacent to Main Street, is privately owned by Michael O'Malley, who is not a party to this action. The next section (hereinafter called the Steel road) is owned by defendant, K.A. Steel Chemicals, Inc. (Steel), and proceeds to the 90-foot reserve strip along the south side of the Illinois & Michigan Canal (I&M Canal). Steel, which manufactures, repackages, and distributes hazardous chemicals, purchased its property on the north and south sides of the I&M Canal in 1963.

The remainder of the road (hereinafter called the Lemont road) is owned by defendant, the Village of Lemont (Lemont). It crosses the southern reserve strip and the I&M Canal, then proceeds east along the 90-foot reserve strip on the north side of the canal to LDC's property. The Steel road and a leased section of the Lemont Road lead into Steel's chemical plant located north of the I&M Canal. In 1970,

Lemont purchased the 90-foot reserve strips along the I&M Canal from the State of Illinois, which acquired it from the federal government in 1947. When discussing the Steel and the Lemont roads together, it will be called the canal road.

LDC purchased 55 acres of vacant and unimproved land adjacent to the I&M Canal, including water-filled quarries, in 1989. None of its property, which is east of the Steel plant, is located in Lemont. LDC bought the property in anticipation of developing it into a recreational marina, knowing that there was no guaranteed access to the property.

In June or July 1990, LDC brought in heavy equipment to widen and clear the Lemont road without Lemont's knowledge or permission. During the road clearing, vegetation and trees were destroyed. When Doug Blocker, Lemont's building and zoning administrator, learned of the clearing, he contacted Terry Regan, LDC's president, and expressed concerns about the nature and type of road improvements proposed by LDC as well as drainage, erosion, and public safety issues.

After several letters between the two men, Blocker told Regan that he had no approval for a temporary road, that he had to clean all the trees and bushes immediately, and that he should not assume that the I&M Canal reserve strip could be used as a road for LDC's proposed development plans. Blocker also told Regan to not use the road until LDC's overall development plans had been submitted to Lemont and reviewed. Lemont claimed that it had legitimate public safety and liability concerns about the use of the canal reserve strips. During that same time, Steel informed LDC that it could not use the Steel road without advance permission.

Nevertheless, LDC proceeded to use the canal road to bring landfill onto its property without Lemont's knowledge or permission. Subsequently, on September 26, 1990, Lemont posted a stop work order and locked the gate that crosses the Lemont road, thus blocking LDC's access to its property over the canal road.

In 1992, LDC brought an action for declaratory, injunctive, and monetary relief against Lemont, alleging that Lemont was wrongfully denying LDC access to its property by maintaining a locked gate on the Lemont road. In November 1994, LDC filed its fourth-amended complaint. The claims involved in this appeal are as follows.

In counts I through III, LDC requested a declaration that the canal road is a public highway by statutory dedication, common law dedication, or prescription, and sought to enjoin Lemont from interfering with LDC's use of the canal road to access its property. In

counts VII and VIII, LDC requested a declaration and injunction against Steel, alleging that Steel's portion of the road is either a public or private road by prescription. In count X, LDC sought declaratory and injunctive relief against Lemont based on an implied easement by estoppel.

On December 15, 1994, LDC filed an emergency petition for a preliminary injunction, alleging that Lemont and Steel continued to deny LDC unfettered access to the canal road, thus prohibiting LDC from developing its property. Emergency relief was denied, but a hearing was set.

On July 10, 1995, the trial court found that LDC had the right to unfettered use of the canal road due to the existence of a prescriptive easement, an implied easement, a statutory dedication, and a common law dedication. A preliminary injunction was issued and Lemont was ordered to remove its lock from the gate. The court also ordered both defendants to allow LDC, its agents, and its invitees free and unfettered access over the canal road. However, the court refused to order Lemont to remove the gate and restore the road to its condition as of September 1, 1990, or to stay the preliminary injunction pending this appeal. We affirm in part; reverse in part; and modify in part.

■ The purpose of a preliminary injunction is to prevent a threatened wrong or a continuing injury pending a full hearing on the merits of the case. *Wilson v. Wilson*, 217 Ill. App. 3d 844, 849, 577 N.E.2d 1323 (1991). The petitioner must establish: (1) a certain and clearly ascertained right in need of protection, (2) irreparable harm without the injunction, (3) absence of adequate legal remedies, and (4) a likelihood of success on the merits. *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 156, 601 N.E.2d 720 (1992). In deciding whether to grant a preliminary injunction, the trial court must balance the equities and relative inconvenience to the parties and determine whether a greater burden will be imposed on the defendant by granting the motion than will be imposed on the plaintiff by denying it. *Eldridge v. Eldridge*, 246 Ill. App. 3d 883, 888, 617 N.E.2d 57 (1993). Because a preliminary injunction is an extraordinary remedy, the status quo, which is the last actual, peaceable, uncontested status preceding the controversy, is to be preserved with the least injury to the parties. *Hartlein*, 151 Ill. 2d at 156; *Eldridge*, 246 Ill. App. 3d at 888-89.

■ Generally, the standard of review for a preliminary injunction is whether the trial court abused its discretion in determining that the plaintiff provided *prima facie* evidence to support his or her claim. *Weitekamp v. Lane*, 250 Ill. App. 3d 1017, 1023, 620 N.E.2d 454 (1993).

The question before the reviewing court is whether there was a sufficient showing to sustain the trial court's order. *Hartlein*, 151 Ill. 2d at 157. Instead of deciding controverted facts on the merits of the case, the reviewing court decides only whether the plaintiff has demonstrated a *prima facie* case that there is a fair question as to the existence of the claimed rights; that the circumstances lead to a reasonable belief that the plaintiff will probably be entitled to the relief sought; and that the status quo should be preserved until the case can be decided on the merits. *Hartlein*, 151 Ill. 2d at 157.

Instead of using the abuse of discretion standard, Steel urges this court to evaluate whether the trial court's conclusion was contrary to the manifest weight of the evidence, which is the standard used when the trial court's order effectively determines the case's merits instead of only preserving the status quo until there can be a hearing on the merits. *Dixon Ass'n for Retarded Citizens v. Thompson*, 91 Ill. 2d 518, 524-25, 440 N.E.2d 117 (1982); *Weitekamp*, 250 Ill. App. 3d at 1022. We decline to apply the heightened standard because the trial court issued a preliminary injunction to be in existence only until a hearing on the merits can be held. The preliminary injunction was not intended to be a permanent remedy.

## A CLEARLY ASCERTAINABLE RIGHT

The first factor to be considered for a preliminary injunction is whether LDC had a clearly ascertainable right to free and unfettered access over the canal road. To show a clear and ascertainable right, LDC must raise a fair question that it has a substantive interest recognized by statute or common law. *Kilhafner v. Harshbarger*, 245 Ill. App. 3d 227, 229, 614 N.E.2d 897 (1993); *Continental Cablevision of Cook County, Inc. v. Miller*, 238 Ill. App. 3d 774, 787, 606 N.E.2d 587 (1992). LDC claims that it has the right to unfettered use of the canal road because the road is a public highway due to the doctrines of prescriptive easement, statutory dedication, common law dedication, and implied easement.

## PRESCRIPTIVE EASEMENT

■ To establish a public highway by prescription pursuant to section 2—202 of the Illinois Highway Code (605 ILCS 5/2—202 (West 1994)), public use of the road must have been adverse, under a claim of right, open and notorious, continuous and uninterrupted, with the knowledge of the owner but without his consent, for 15 years. *Koch v. Mraz*, 334 Ill. 67, 75-76, 165 N.E. 343 (1929); *City of Mattoon v. Paradise Township*, 131 Ill. App. 3d 327, 333-34, 475 N.E.2d 644 (1985). A prescriptive easement can be determined from the surrounding circumstances. *Weihl v. Wagner*, 210 Ill. App. 3d 894, 896, 569 N.E.2d

297 (1991). It is not the number of people who actually use the road, but the character of the use, that is important. *Koch*, 334 Ill. at 75; *Feldker v. Crook*, 208 Ill. App. 3d 1012, 1026, 567 N.E.2d 1115 (1991).

■ We find that the trial court did not abuse its discretion in finding that LDC made a fair showing that a prescriptive easement exists on the canal road. There was a considerable amount of evidence that the public used the canal road to access the quarry area for recreational purposes, such as fishing, swimming, camping, and picnicking, for over 15 years from the mid-1950s through the mid-1970s, and to visit people who lived in shacks along the canal from the 1950s to the early 1970s.

David Hanus testified that he used the canal road to go to the quarry to fish from 1965 until the summer of 1980, when he was stopped by a security guard at the gate Steel had erected. In the 1960s and 1970s, Lemont Police Chief Bluis went fishing in the quarry during the spring, summer, and fall months. He saw other people swimming, fishing, and camping, primarily during the summer. Joseph Bobikiewicz, former Lemont highway commissioner, testified that he and his father began driving on the canal road in 1953 or 1954 to go fishing. The gate was erected after 1975. Alvin Maas, a hazardous materials driver for Steel since 1967, testified that he traveled on the canal road since 1957 to go fishing in the quarry. During the 1960s, he visited someone who lived in one of the shacks along the canal.

LDC did not have to prove that a prescriptive easement exists by a preponderance of the evidence. Instead, for a preliminary injunction, LDC had to make a fair showing that it had an ascertainable right to access over the canal road because of the existence of a prescriptive easement. We hold that the trial court did not abuse its discretion in finding that LDC made a fair showing of a prescriptive easement.

■ The next issue is the extent of the prescriptive easement, which is defined by the prescriptive use that led to the easement's creation. *In re Onarga, Douglas & Danforth Drainage District*, 179 Ill. App. 3d 493, 495, 534 N.E.2d 226 (1989). All easements are limited and qualified by the use that established the prescriptive right. *Peters v. Milks Grove Special Drainage District No. 1*, 243 Ill. App. 3d 14, 19, 610 N.E.2d 1385 (1993).

The prescriptive easement is limited to the public's use of the canal road from the mid-1950s until its use was restricted in the mid-1970s. The public's use was not unfettered, but was limited to accessing the quarry area for recreational purposes such as fishing, swimming, camping, and picnicking. In addition, from the 1950s through

the early 1970s, the road was used by people who lived in shacks scattered along the canal road and those who visited them.

The public's use of the canal road was somewhat limited by its condition. The Lemont road was rough, winding, hilly, and filled with potholes. Two cars could not pass each other on the road unless one of them moved off the road where there were trees and brush. If a car was driven faster than 10 miles an hour, it could bottom out. At times, cars would be towed after getting stuck in the mud or bottoming out. The Steel road was a very rough, narrow trail with deep holes and sharp rocks until the late 1960s when Steel improved and maintained it. In determining the extent of the prescriptive easement, we decline to consider Steel's use of its own road, which is irrelevant to the issue of a prescriptive easement.

Consequently, LDC does not have an unlimited right to use the canal road. Specifically, it cannot use the canal road to pursue its commercial development plans. While we agree that LDC's future development plans are irrelevant (*Schultz v. Kant*, 148 Ill. App. 3d 565, 575, 499 N.E.2d 131 (1986)), LDC's use of the canal road for commercial purposes is not merely an issue for the future. Regan, LDC's president, consistently testified that LDC wanted access to its property to build a recreational marina development. Regan explained that LDC had obtained the necessary permit from the Army Corps of Engineers in January 1994, but could not get a special use permit from Cook County until it had an adequate access road to its proposed development. Regan also stated that LDC's trucks were travelling on the canal road in September 1990 in furtherance of LDC's commercial activities. At that time, LDC was preparing its property for future development as a marina recreational area by removing limestone spoils and bringing in landfill. LDC plans to use the canal road to haul 250,000 to 300,000 tons of limestone scrap off its property and to bring in landscaping soil to grade 5 to 10 acres of land. The canal road would then be used by heavy trucks and other heavy equipment transporting tons of construction materials. Flatbed trucks would carry bulldozers, front end loaders, cranes, and other heavy equipment. Concrete and tar trucks and trucks hauling tons of construction materials would also use the canal road.

Those uses go far beyond the public's use of the canal road to access the quarry area for recreational purposes and to visit people who lived in shacks along the canal. The public's use was casual and seasonal, involving personal vehicles. It was not commercial and did not involve heavy trucks or hauling tons of limestone over the road. Consequently, a preliminary injunction based on the prescriptive easement does not allow LDC to bring heavy equipment or trucks

over the canal road to prepare its property for commercial development. Furthermore, LDC cannot improve the road so that heavy equipment and trucks can travel on it. Although the owners of an easement are allowed to make repairs so that the easement is reasonably usable, they cannot make material alterations in the easement's character that place a greater burden on the property. *Schultz*, 148 Ill. App. 3d at 573. Thus, LDC cannot use the canal road to transport tons of limestone spoils or landfill. It is limited to the type of use that led to the creation of the prescriptive easement.

## IMPLIED EASEMENT

■ The next issue is whether the trial court erred in its finding that there was an implied easement. Implied easements relate to a property owner's prior or existing use of land (*Hallock v. Wear*, 194 Ill. App. 3d 894, 904, 551 N.E.2d 712 (1990)) and arise when two grantees take parcels of land, one of which is burdened by an existing easement (*Mid-City National Bank v. C.A. Hemphill & Associates*, 163 Ill. App. 3d 15, 24, 516 N.E.2d 460 (1987)). The doctrine of implied easements is based on the principle that a conveyance of property, in the absence of an express grant, imparts all the benefits and burdens that exist at the time of the sale. *Hallock*, 194 Ill. App. 3d at 904. It is designed to give effect to the actual intent of the parties as shown by the facts and circumstances of the particular case. *Hallock*, 194 Ill. App. 3d at 904.

The essential elements for an implied easement from a preexisting use are: (1) common ownership of the dominant and servient parcels followed by a separation of title; (2) before the separation, the common owner used part of the united parcel for the benefit of another part and this use was continuous, obvious, and permanent; and (3) the claimed easement is beneficial and necessary to the enjoyment of the parcel conveyed or retained. *Hallock*, 194 Ill. App. 3d at 904. The party seeking an implied easement must establish by clear and convincing evidence that at the time of the severance of title, the easement was in existence and was intended to be permanent. *Hallock*, 194 Ill. App. 3d at 904.

■ There is no evidence of an implied easement on the canal road. LDC's contention is based solely on conjecture that the State of Illinois would not have conveyed a plat along the I&M Canal to Nathaniel J. Brown in 1848 without a right of access. Not only did the Brown plat involve only part of what is now LDC's property and a small portion of the Lemont road, but there is no other evidence of an implied easement.

## PUBLIC HIGHWAY BY DEDICATION

■ The trial court also found that the canal road was a public

highway due to a statutory dedication and a common law dedication. The dedication of a road can be either a statutory dedication, which is created by the recording of a plat, or a common law dedication, which is shown by the grantor's actions. *Kirnbauer v. Cook County Forest Preserve District*, 215 Ill. App. 3d 1013, 1020, 576 N.E.2d 168 (1991). A statutory dedication is created by a particular form of the instrument recorded, while a common law dedication may be made by a written instrument or may be evidenced by acts and declarations without a writing. *First Illinois Bank v. Valentine*, 250 Ill. App. 3d 1080, 1091, 619 N.E.2d 834 (1993).

## STATUTORY DEDICATION

■ There was no statutory dedication of the canal road. A statutory dedication occurs only upon strict and full compliance with the requirements of the Plat Act (765 ILCS 205/0.01 *et seq.* (West 1994)) and a clear indication on the plat of the donation to the public. *Kirnbauer*, 215 Ill. App. 3d at 1020; *Alpine Acres Homeowners Ass'n v. Leonard*, 213 Ill. App. 3d 634, 644, 571 N.E.2d 1150 (1991). In determining whether there was a valid statutory dedication, the court is limited to an examination of the plat and its marks and notations. *Emalfarb v. Krater*, 266 Ill. App. 3d 243, 252, 640 N.E.2d 325 (1994). A plat made by the Illinois and Michigan Canal commissioners has the same effect as a statutory plat. *Cheadle v. County Board of School Trustees*, 20 Ill. App. 3d 212, 215, 313 N.E.2d 196 (1974).

When Lemont bought the reserve strips in 1987, there were no notations or marks on the I&M Canal commissioners' plat to indicate that there was any dedication of a public highway. Although the conveyance deed conditioned the sale on the property being used for public purposes, a highway was only one example of many potential uses listed. Furthermore, Steve Jones, the Lemont village administrator, testified that according to the plat book that corresponds to the area where the canal road is located, no part of the canal road was a dedicated roadway.

## COMMON LAW DEDICATION

■ For a common law dedication, there must be clear and unequivocal evidence of (1) an intent to donate the property for the public use and (2) acceptance by the public. *People ex rel. Markgraff v. Rosenfield*, 383 Ill. 468, 473, 50 N.E.2d 479 (1943); *Semmerling v. Hajek*, 258 Ill. App. 3d 180, 187, 630 N.E.2d 496 (1994). The most important requirement is donative intent, which may be manifested by a formal dedication or by acts of the donor from which the intent may be so fairly presumed as to equitably estop the donor from deny-

ing a donative intent. *People ex rel. Markgraff*, 383 Ill. at 473; *Alpine Acres Homeowners Ass'n*, 213 Ill. App. 3d at 645. Dedication is not an act of not asserting a right, but is the affirmative act of the donor resulting from an active decision in the owner's mind. *People ex rel. Markgraff*, 383 Ill. at 473-74. Proof of any act by the dedicator that evinces an intention to dedicate must be clear, unequivocal, and unambiguous. *People ex rel. Markgraff*, 383 Ill. at 473; *Alpine Acres Homeowners Ass'n*, 213 Ill. App. 3d at 645.

■ There is no evidence in the record that either Lemont or Steel intended to dedicate any part of the canal road to the public. Although the reserve strips were sold to Lemont with the condition that the property be used for public purposes, one of which is for highways, there was no donative intent to dedicate a road to the public. Selling the property to Lemont so that it could be used for public purposes is not a common law dedication.

With regard to the Steel road, there was no evidence of donative intent from Steel because Steel took active measures to keep the general public off its road by posting signs, having security guards patrol, and putting up a series of fences at least as early as 1976. The public's use, without more, is not *prima facie* evidence of donative intent.

We reject LDC's assertion that the 1976 lease between Steel and Lemont for a portion of the Lemont road shows Steel's intent to donate the Steel road to the public. The lease merely grants a right of access to a limited number of Lemont residents for a limited amount of time.

## STATUS QUO

■ The status quo, which is the last actual, peaceable, uncontested status preceding the controversy, is to be preserved with the least injury to the parties. *Hartlein*, 151 Ill. 2d at 156; *Eldridge*, 246 Ill. App. 3d at 888-89. We hold that the status quo existed in June 1990 prior to LDC widening and clearing the canal road and prior to its use of the road to deliver landfill material to its property. At that time, LDC did not have unfettered access, but had limited access to its property.

Based on the foregoing, we affirm the preliminary injunction with modification. We are not deciding the merits of the case, but are merely maintaining the status quo until a full hearing on the merits can be held. We find that LDC made a fair showing that a prescriptive easement was created, but not that an implied easement, statutory dedication, or common law dedication existed. Thus, we affirm the preliminary injunction based on a prescriptive easement, but reverse the preliminary injunction based on an implied easement, statu-

860

tory dedication, and common law dedication. We modify the preliminary injunction so that it does not allow LDC unfettered use of the canal road. Instead, LDC's use is that which existed in June 1990 before LDC cleared and widened the canal road and before it began transporting heavy materials over the road. Finally, the circuit court's order that Lemont remove the lock from its gate is affirmed.

Affirmed in part; reversed in part and modified in part.

TULLY, P.J., and GREIMAN, J., concur.